JAMAICA POND AQUEDUCT CORPORATION *vs.* THEOPHILUS P. CHANDLER & others.

A grant of " a way," or of " the privilege of a highway," carries an easement only.

The whole court will not reconsider a finding, upon a matter of fact, of a single justice before whom a case has been tried, without a jury.

An instrument by which, for a consideration received all at one time, the grantors " lease " certain land to the grantee, mentioning no time during which the estate is to continue, and reserving, " so long as this lease shall continue, the right to any logs or pipes in the same leased premises," and certain other rights connected therewith, to have and to hold the same to the grantee, " his heirs and assigns, under the restrictions and reservations aforesaid, so long as said grantors shall keep pipes in his land, as aforesaid, and no longer," conveys a base fee.

A release of all the grantor's property, estates, rights and privileges, without further description, will not include land previously conveyed by him, by an unrecorded deed, although the grantee had no knowledge of the existence thereof.

By a grant of land, with full covenants of warranty, accompanied with a proviso that, whereas the grantee intends to flow some part of the premises, the grantee shall have the right to improve and cultivate the part of the premises which shall not be so flowed, a life estate only is excepted.

WRIT OF ENTRY for the recovery of three parcels of land.

The demandants' immediate grantor of the demanded premises was George H. Williams, by deed dated October 19th 1857. His grantor was the city of Boston, by deed dated January 1st 1857, and the city was the grantee of the aqueduct corporation, by deed dated May 12th 1851. All these deeds were simple releases, without description or covenants. That of the aqueduct corporation conveyed to the city of Boston " all and singular the property, estates, rights and privileges " of the corporation, and similar terms were used in the conveyance of the city and that of Williams. The aqueduct corporation's title to a portion of the demanded premises rested on a deed from Luther Eames, dated November 28th 1795, conveying a

grist-mill with twenty rods of land and the ponds, dams, &c. appurtenant to the mill, together with the " privilege of a certain highway twenty feet wide appertaining to said mill." In some of the earlier deeds under which Eames claimed title, this passage was described simply as a highway appertaining to the mill. As to this way, it was ruled by *Metcalf*, J., before whom the case was tried, without a jury, that these deeds conveyed only an easement.

Another portion of the demanded premises was that lying southerly of the abovenamed passage way, and between that and the lot conveyed to the corporation by Giles Alexander hereinafter mentioned. Concerning this the judge found, upon the whole evidence, that the aqueduct corporation had made no use of the land or any claim of right therein for many years, besides such use and claim as would enable them to preserve their aqueduct in repair through it; and that, if they ever claimed any estate therein recoverable by writ of entry, they were disseised thereof when they made their deed to the city of Boston, so that no title which could be demanded in a writ of entry passed to or has been conveyed by the city. The demandants had permission to exhibit to the whole court all the deeds which they put in evidence and the testimony relating to a disseisin.

Among other things to show that the aqueduct corporation were not disseised of a portion of the demanded premises, they put in evidence a deed from the aqueduct company to John Ward, dated July 12th 1804, but not recorded, the material portion of which is as follows :

" *Whereas*, John Ward of Roxbury in the county of Middlesex, blacksmith, has this day made a grant to the aqueduct corporation of the privilege of laying logs or wooden pipes in his land between Jamaica Pond and the old mill called Pierpoint's Mill in Roxbury, to convey fresh water from the same pond to the town of Boston, the said corporation, in consideration thereof and for five dollars money paid by the said Ward, does lease to him their land in said Brookline, described as follows.' [Here followed a description of the premises.] " But the said corporation does hereby reserve to itself and its successors, so

long as this lease shall continue and be in force, the right to any logs or pipes in the same leased premises for the purpose of conveying water from Jamaica Pond, or any of the streams, fountains and springs issuing from or near the same, through all and every part of the premises hereby leased; and of raising any dam above or on the westerly boundary of the leased premises, to raise, stay or conduct the water for the use aforesaid; and to dispose of, check, impede or use any water tending to or issuing through the same leased premises at its pleasure; and also reserving a right to use and improve the corn mill thereon, being and standing at the pleasure of the said corporation to use the same as mills for their former use, or to put tools and lodge laborers employed in the same aqueduct therein occasionally; but the said corporation shall not put or place any family to reside there. To have and to hold the same to the said Ward, his heirs and assigns, so long as said corporation shall keep pipes in his land, as aforesaid, and no longer."

As to the remaining portion of the demanded premises, Giles Alexander, by his deed of warranty dated August 10th 1796, conveyed to the aqueduct corporation four acres and three perches of land in Roxbury, (minutely bounded,) " to have and to hold the aforegranted premises to the said corporation, and the successors and assigns of said corporation, to their use and behoof forever;" " Provided, nevertheless, and it is the meaning and intention of the parties to this grant, that whereas the said corporation intend to flow or cover with water some part of the aforegranted premises, now it is intended and understood by the said parties that the said corporation shall flow and cover with water as much of the premises as they may think necessary, and that the part of the premises which shall not be so flowed or covered with water, the said Alexander shall have good right to improve and cultivate, and to take the emoluments thereof to his own use."

It was contended by the tenants that this deed conveyed only an easement to the grantees; but the judge ruled that it conveyed a fee simple estate to the aqueduct corporation, subject to the grantor's right to the use, during his life, of such parts thereof

as should not be flowed by the grantees. He further found that the grantees were not disseised thereof before they conveyed to the city of Boston, and that the demandants were entitled to recover the land described in that deed ; but that as to all the other parts of the demanded premises, the tenants had not dis. seised the demandants thereof.

Some of the deeds are more fully referred to in the opinion.

*E. D. Sohier,* (*A. W. Austin* with him,) for the demandants. By the true construction of the several deeds forming the chain of the demandants' title, the entire fee of the northernmost part of the demanded premises, heretofore used as a passage, was in the demandants. The title to the premises referred to in the judge's report as lying southerly of the tract used as a passage was in the aqueduct corporation at the time the corporation made its deed to the city of Boston. The instrument from the aqueduct corporation to Ward was a lease. The parties treated it as a lease. The rent is the use of the lessee's land for an indefinite term, and it may properly be denominated a continuing lease. *Bacon* v. *Bowdoin,* 22 Pick. 405. *Sumner* v. *Williams,* 8 Mass. 174. *King* v. *King,* 7 Mass. 499. *Blaine* v. *Chambers,* 1 S. & R. 172.

A writ of entry tries title to whom the fee belongs. Notwithstanding the tenants may have an easement in the demanded premises the demandants have a right to maintain this action. *Hancock* v. *Wentworth,* 5 Met. 450. *Morgan* v. *Moore,* 3 Gray, 319. The title Ward obtained by the instrument from the aqueduct corporation is inoperative against the demandants, as the instrument was never recorded. Gen. Sts. *c.* 89, § 3.

*W. Gaston & G. Putnam, Jr.,* for the tenants. The conveyance of ponds and other water privileges appertaining to a mill carries only a right of flowing. *Bullen* v. *Runnels,* 2 N. H. 25. *Jackson* v. *Halstead,* 5 Cow. 216. *Doe* v. *Williams,* 11 Q. B. 688. On an abandonment of the mills and the drawing off of the water, the lands which had been flowed revert to the original owner and his assigns, freed from the easement. *Pettee* v. *Hawes,* 13 Pick. 323. *Miller* v. *Miller,* 15 Pick. 57. *Thompson* v. *Banks,* 43 N. H. 540. *Hathorn* v. *Stinson,* 1 Fairf. 224. The

conveyance of the " privilege of a way appurtenant to a mill " carries only a right of way, and not the soil over which the way lies. *Leonard* v. *White,* 7 Mass. 6. *Hasty* v. *Johnson,* 3 Greenl. 282. *Peck* v. *Smith,* 1 Conn. 103. *Hart* v. *Chalker,* 5 Conn. 311. *Whitbeck* v. *Cook,* 15 Johns. 483. The instrument called a " lease " is a deed of a fee simple of the kind known as a " base," " qualified " or " determinable " fee. 2 Bl. Com. 109, 110. 4 Kent Com. (6th ed.) 9. A deed of a specific parcel of land described by metes and bounds, whether recorded or not, is good against a subsequent purchaser of all the grantor's property without description. *Adams* v. *Cuddy,* 13 Pick. 460. *Chaffin* v. *Chaffin,* 4 Gray, 280.

BIGELOW, C. J. The lucid arguments of the learned counsel for the respective parties have made the points at issue in this apparently complicated case very plain and easily to be understood. The controversy relates to three portions or parcels of real estate, the title to which depends on considerations peculiar to each, and which therefore may be appropriately discussed separately.

1. The first parcel is that which is described in the title deeds as a passage way or highway from the town road to the old mill situated on a brook known as " Muddy Brook." The demandants claim that the fee of the land over which this way passes is vested in them. If so, there can be no doubt of their right to maintain a writ of entry to recover seisin and possession thereof, notwithstanding it would be subject to a perpetual easement in third persons. *Morgan* v. *Moore,* 3 Gray, 319, 322. But on a careful examination and consideration of the deeds under which the demandants claim title to the soil of this way or road, we are of opinion that by a just interpretation of them the fee in the land did not pass to the demandants. Tracing back the title to its source, as disclosed by the deeds offered at the trial, we are unable to find any grant of the fee in this strip or parcel to those under whom the demandants claim. The deeds from Ruggles and Crafts to Joseph Belknap, Jr., in 1695 and 1698 do not purport to convey the land over which the way passes. They convey only the " highway twenty feet wide

appertaining to said mill, leading from the town highway to the said mill." A grant of a way, without other words indicating an intent to enlarge the natural import of the word, carries an easement only. The general rule of construction is well settled that everything passes which is necessary to the full enjoyment of the right, title or estate which is included in the words of a grant; but nothing more. The ownership of the soil over which a road or way is located is not essential to the free use of the right of passage over it. The fee may well be, and often is, in one person, and the privilege of use and enjoyment of the easement in and upon the land may be vested in another. It is true that in some cases the grant of an estate designated and described only by the particular use or purpose for which the land is appropriated, will be held to pass a fee. Thus a grant of " a house," " a wharf," " a mill " or " a well," will be held to pass the fee in land which is occupied and improved, at the time of the grant, for the use or purpose so designated in the deed; because such structures necessarily comprehend and aptly describe the entire beneficial occupation and enjoyment of the land itself, continuously, exclusively and permanently, and so clearly indicate an intent to grant the whole interest in the soil. *Johnson* v. *Rayner*, 6 Gray, 110. But a different rule of construction is applicable, when a particular or special right or easement in land is conveyed, which may well coexist and be enjoyed and used by the grantee consistently with the ownership of the fee in the grantor. In such cases the fee is not passed in express terms; and it does not pass by implication, because it is not incidental or essential to the right or interest which is described in the deed. Whenever a grant is made of a right or easement in land which falls within the class sometimes described as " non-continuous " — that is, where the use of the premises by the grantee for the purpose designated in the deed will be only intermittent and occasional, and does not embrace the entire beneficial occupation and improvement of the land — the reasonable interpretation is, that an easement in the soil, and not the fee, is intended to be conveyed. Among the most prominent of this class of easements is a way.

In these ancient deeds under which the demandants claim, not only is the grant, in terms, of a highway, carefully avoiding any mention of the land over which it passes, but it is of a highway which appertains to the mill described in the deed. It is a conveyance of a way appurtenant only; and as land cannot be appurtenant to land, but an easement in one parcel may well be appurtenant to the fee of another parcel, it would seem to be very clear that a right of way only to the mill passed by the deeds. This conclusion is greatly strengthened by the consideration that such was manifestly the contemporaneous construction which the ancient owners of the premises put on the deed under which they held and enjoyed the premises. As early as 1752 James Shed, who acquired a title to them in 1736, in a deed to John Pierpont, grants only the " privilege of a certain highway," and this form of phraseology is carefully preserved in all subsequent grants, down to the time of the conveyance to the demandants in 1795. Indeed, a critical examination of the demandants' title discloses the fact that only a " privilege " in this highway passed to them. Whatever might have been the extent of the right of previous owners in the soil over which the way passed — that is, if a grant of the highway would carry the land under it, the right of Benjamin Pierpont, under the levy of execution by which he acquired title in 1787 — was expressly confined to " the privilege of a certain highway of twenty feet wide." No other or greater right or interest was ever vested in him; and this was the title which afterwards came to the demandants by sundry mesne conveyances. It is too clear to admit of debate, that a grant of a privilege of a way passes only the right to use it. It is the grant of an easement only, and not of a fee. Any other interpretation would give no force or meaning to the word " privilege," but would reject it altogether. The elementary definition of an easement is " a liberty, privilege or advantage in land without profit distinct from an ownership in the soil," so that the use of this word " privilege " appropriately designates the conveyance of an easement only as distinguished from a grant of the soil itself. For these reasons, we are of opinion that the demandants cannot recover, in

O

this action, seisin and possession of the land over which said way is located.

2 The next parcel of land which the demandants claim is that which is described in the report as "lying southerly of the abovenamed passage way, and land which was conveyed to the demandants by Giles Alexander in 1796." So far as the title to this portion of the demanded premises depends on the determination of a question of fact, it is not reserved for our consideration, nor could it properly come before us on a report. In an action at law, a mere question of fact cannot be brought up for the decision of the whole court. The power of a single judge to report cases is limited by Gen. Sts. *c.* 112, § 10, to questions of law arising upon a trial or other proceeding, or upon a motion for a new trial on account of non-direction or misdirection as to matters of law. So too, when a jury trial is waived, as was done in the case at bar, and a cause is heard and determined by the court under Gen. Sts. *c.* 129, § 66, the decision of the judge who hears the case upon questions of fact is final, and cannot be revised or reconsidered by the whole court on report, exceptions or otherwise. We cannot, therefore, properly look into the evidence for the purpose of passing on the question whether the court correctly found the fact that the aqueduct corporation, at the date of their deed to the demandants, were disseised of a freehold or other estate recoverable by writ of entry, in this part of the premises in controversy. The question of ouster and disseisin was a pure question of fact, and, it having been found against the demandants, the application of the familiar and undisputed rule of law, that a disseisee can convey no title to a stranger, is decisive against the right to maintain this action to recover that part of the demanded premises of which the demandants' grantors were disseised at the time of this conveyance.

But if the fact of disseisin was not shown to have existed, there is another insuperable legal objection against the right of the demandants to maintain a writ of entry for the recovery of a large part of this parcel or tract of land; that is, the piece of land where the old mill stood, the watercourse or channel which

conducted water to said mill, and a part of the old mill pond therewith connected, being the premises described in an instrument bearing date July 12th 1804, from the aqueduct corporation to John Ward. Upon a careful consideration of this instrument, we are clearly of opinion that it conveyed not merely a chattel interest in the premises therein described, but an estate of a much higher nature. Although the parties to the instrument call it a lease, and use that word only to pass the estate or interest which they intended to transfer, it does not follow that no other than a leasehold title was thereby conveyed. The character of the instrument and the quantity of estate thereby created cannot be properly determined by a consideration of a single clause only, or by giving to a word, which may have been used inartificially, a strict technical meaning. The true rule of exposition is, to look at all parts of the instrument, and so to interpret it that every clause shall have full operation and effect, if it can be done consistently with the rules of law and the manifest intent of the parties. A learned writer justly says, that the law is curious and almost subtilizes to devise reasons and means to make deeds avail according to the just intent of the parties. Rigid and technical rules are not to be adhered to, when their application will create repugnancy or render inoperative clear and distinct language which parties have adopted to express their meaning. Thus, it has been held that an instrument which contained no words of grant was sufficient to pass a fee, because the habendum and the covenants which followed clearly indicated that such was the intent of the grantor. *Bridge* v. *Wellington*, 1 Mass. 219. So a deed of release, which, when made to a party not in possession or having no seisin, strictly speaking passes no title, is always held to pass an estate, when it appears that a technical construction of the instrument would frustrate the intent of the releasor. *Russell* v. *Coffin*, 8 Pick. 143, 150. Undoubtedly the word "lease," as ordinarily interpreted and understood, as well as according to its strict legal signification, denotes the creation of an estate for years commonly called a term. So construed and understood, it would be held to pass only a chattel interest. But clearly it was in a

very different sense that the parties to the instrument under consideration intended to use it. No certain term during which the interest or right in the premises was to exist or continue is named, nor does the purpose for which the premises were to, be used serve to ascertain and define the length .of time for which the estate was to be held by the lessee or grantee. Nor has it the other ordinary characteristics of a lease. No rent is reserved; it is in the form of a deed poll; and it was made upon a consideration, the whole of which was received by the party at the time of making the instrument. But the decisive indication that it was not intended as a lease or to create a chattel interest only is to be found in the habendum. The office and purpose of this part of all deeds are to limit and define the nature and quality of estate which the grantee is to have in the estate granted, and whenever the language used in the premises of the deed is uncertain or indefinite as to the extent of the right or interest intended to be conveyed, the words of the habendum are to be resorted to in order to ascertain the real character of the limitations. It is only where the habendum is clearly repugnant to the granting clause, that the latter is to yield to the former. The words of the habendum in this instrument are clear and explicit, and have a well defined and settled meaning in the law. The estate is to be held to the grantee, " his heirs and assigns; " language technically apt and appropriate to vest a fee, and, but for the words which follow, sufficient to pass a fee simple absolute. But these words are accompanied by a collateral limitation by which the fee previously granted is restricted to a period of time to be ascertained and measured by the happening of a collateral event, namely, by the continuance of the exercise of a right by the grantors to keep their water pipes in the land of the grantee, the grant of which formed the consideration of the conveyance. The effect of this limitation is not to render the estate granted less than a fee, but only to render it, in legal phraseology, a base or determinable fee. This is defined to be " an estate which may continue in one and his heirs forever, but which may come to an end or be determined by some act or event expressed on the limitation, to

circumscribe its continuance." It is impossible, upon any sound rule of construction, to neglect the full and explicit language of the habendum in the deed, or to give it any interpretation other than that which the words naturally and legally import, unless the clause is clearly repugnant to previous parts of the instrument. But there is no such repugnancy. The word "lease" plainly indicates an intent to pass some estate to the grantee, but does not limit or define it with certainty. The original signification of the word "lease" is, that the lessee has an estate into which he cometh by lawful means. Co. Litt. 43 b. The nature and quantity of this estate in the present case are ascertained and fixed by the words of the habendum, which can have full operation and effect without in any way impairing or controlling the premises of the deed. The result is, that as to this part of the demanded premises the demandants fail to show that they are entitled to seisin and possession thereof, the fee having passed out of their ancestor under the conveyance to Ward, and not having been determined at the time the present action was brought.

It was suggested, at the argument, that the title of the demandants could not be affected by this deed, for the reason that it was not on record at the time of the conveyance to them, and that they had no actual notice of its existence. But the decisive answer to this position is, that the grant to the demandants did not include the premises described in the conveyance to John Ward. They claim under a grant of all the estate that belonged to the aqueduct corporation in the year 1851. At that time, the fee of this part of the demanded premises was not vested in the corporation, but in those persons who held it under this deed to Ward. When a deed is made of all a grantor's real estate, without description, nothing passes except such property as is then vested in him by a legal title. A deed of land, though not recorded, is good as between grantor and grantee, and divests the title of the former, so that it does not pass to a subsequent grantee who takes a conveyance only of the estate which belongs to the grantor at the time of his grant. *Adams* v. *Cuddy*, 13 Pick. 460    *Chaffin* v. *Chaffin*, 4 Gray, 280.

It is hardly necessary to add that this deed could have no legitimate effect to control the evidence of disseisin offered by the tenants. On the contrary, as respects the premises included within the description, it showed that the tenants occupied them under a claim of title; as to the other premises of which disseisin was alleged, it could have no bearing.

3. The only remaining parcel of land in controversy is that which is called the Alexander Lot, which was conveyed to the aqueduct corporation by Giles Alexander, by his deed bearing date August 10, 1796. The title of the demandants depends on the construction of this deed. As to this we can entertain no doubt. The grant was clearly of a fee in apt and proper words, with full covenants of warranty and freedom from all incumbrances, except a certain right which was excepted by the terms of a subsequent provision. On looking at this proviso to ascertain the nature of the incumbrance which is excepted from the warranty, it is plain that it is nothing more than an exception, in favor of the grantor, of a right " to improve and cultivate and to take the emoluments to his own use," of such part of the granted premises as the corporation did not flow or cover with water. This was a personal right excepted out of the grant in behalf of the grantor only, and not for his heirs or assigns. The same rule of interpretation applies to an exception out of a grant as to a deed, in respect to the limitation of the estate thereby created. If the whole fee is granted, and an exception be made to the grantor himself, without words of inheritance, a life estate only is excepted. Shep. Touchstone, 100. *Curtis* v. *Gardner* 13 Met. 461. As to this parcel, therefore, the demandants' title is clearly established, and for so much of the demanded premises the entry must be,            *Judgment for the demandants.*