[No. 3,035.]

# FREY v. CLIFFORD.

PURCHASER FOR VALUABLE CONSIDERATION UNDER REGISTRY ACT.—A mortgagee, in a mortgage given to secure a preëxisting debt, is a purchaser for a valuable consideration within the meaning of that clause in the Act concerning conveyances, which provides that every conveyance of real estate which shall not have been recorded, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, whose conveyance shall have been first duly recorded.

QUITCLAIM DEED.—A quitclaim deed of "all my right, title, and interest in Sacramento City, Upper California, consisting of town lots and buildings thereupon," passes the grantor's interest in his lots in Sacramento.

IDEM.—Such deed, if made in good faith and for a valuable consideration, and without notice, will prevail over an older deed which is subsequently recorded.

PURCHASE UNDER MORTGAGE SALE.—A mortgagee who takes a mortgage to secure a preëxisting debt, and has it recorded, and forecloses it and buys the mortgaged property at Sheriff's sale, and applies the proceeds on his decree without notice of a previous unrecorded deed, acquires a title superior to that vested in the grantee in the previous unrecorded deed.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

The plaintiff appealed.
The facts are stated in the opinion.

*S. W. Sanderson*, for Appellant.

By the deed of January 15th, 1850, from Sutter, Sr., to Pratt, the latter became vested with the legal title. (*Green v. Butler*, 26 Cal. 595; *Vance v. Lincoln*, 38 id. 586; *Stokes v. Middleton*, 4 Dutcher, N. J., 32.)

It may be argued on the other side, that the deed from Sutter, Sr., to Pratt was a voluntary deed, and that as such it must be postponed to a subsequent deed for a valuable consideration, even though the subsequent purchaser took his deed with actual notice. While such may be the law in England, to the regret of some of her Judges, such is not the law in America. (*Horn v. Volcano Water Co.* 13 Cal.

62–71; *Jackson* v. *Town*, 4 Cowen, 599; *Mayor and City Council of Baltimore* v. *Williams*, 6 Maryland, 235; *Sexton* v. *Wheaton*, 8 Wheaton, 229; *Aiken* v. *Bruen*, 21 Ind. 137; *Jackson* v. *Post*, 15 Wend. 588; *Seward* v. *Jackson*, 8 Cowen, 406; *Jackson* v. *Peck*, 4 Wend. 300.)

But were the rule otherwise it would not prejudice the plaintiff, for the subsequent deed from Sutter, Sr., to Sutter, Jr., under which defendant claims, was also a voluntary deed.

Conceding the alleged trust, the deed from Pratt to Anna Sutter was, in legal effect, a deed of gift to her from her husband, Sutter, Sr., and as such vested the title to the premises in her as her separate estate. (*Barker* v. *Koneman*, 13 Cal. 10; *Kohner* v. *Ashenauer*, 17 id. 578; *Peck* v. *Brummagim*, 31 id. 440; *Peck* v. *Vandenberg*, 30 id. 11.)

But had it not been given by the direction of Sutter, Sr., but in direct violation of the supposed trust, it would nevertheless have vested the legal title in Anna Sutter. (*Stokes* v. *Middleton*, 4 Dutcher, 32.)

The deed from Sutter, Sr., to Sutter, Jr., contains no description by metes and bounds, and could not convey any lots which had previously been conveyed. (*Brown* v. *Jackson*, 3 Wheaton, 449; *Coe* v. *Persons Unknown*, 43 Maine, 432; *McConnell* v. *Reed*, 5 Ill. 117; *Butterfield* v. *Smith*, 11 Ill. 485; *Hamilton* v. *Doolittle*, 37 Ill. 473; *Jamaica* v. *Chandler*, 9 Allen, 159; *Adams* v. *Cuddy*, 13 Pick. 460; *Chaffin* v. *Chaffin*, 4 Gray, 280; *Taylor* v. *Taylor*, 3 A. K. Marshall, 18, 994.)

Hodgdon's mortgage being for a preëxisting debt was not for a valuable consideration, and, therefore, under the Registry Act, is void as against plaintiff's deed. (*Clark* v. *Levy*, 20 Cal. 219; *Whelan* v. *Whelan*, 3 Cowen, 537; *Verplank* v. *Sterry*, 12 John. 536; *Coddington* v. *Bay*, 20 John. 637; *Root* v. *French*, 13 Wend. 570; *Stalker* v. *McDonald*, 6 Hill, 93;

*Dickerson* v. *Tillinghast*, 4 Paige, 215; *Padgett* v. *Lawrence*, 10 Paige, 171, 180; *Buffington* v. *Gerrish*, 15 Mass. 156.)

*Beatty & Denson*, and *A. Comte, Jr.*, for Respondent.

The question to be decided is, was Hodgdon's title acquired in good faith, and for a valuable consideration?

It is not denied in this case that Captain Hodgdon acted in this case in perfect good faith, without any knowledge of plaintiff's title, and without any notion to defraud any one. The only questions raised are these: First—Does a mortgage taken to secure an antecedent debt rest on a valuable consideration? Second—If the mortgage itself does not rest on a valuable consideration, does the holder of a deed made by the Sheriff, in pursuance of an order of sale foreclosing that mortgage, the sale and payment of the money being made in advance of the recordation of a prior deed, hold the land as if the mortgage itself was founded on a valuable consideration? The question of bona fides being out of this case, the remaining question to be determined is, what is a valuable consideration? Forbearance in collecting a debt is a valuable consideration. (Bouvier's Law Dic. 330.) That Hodgdon's bid at the mortgage sale did extinguish his debt *pro tanto*, we refer to *Branham* v. *Mayor, etc., of San Jose*, 24 Cal. 607. That the bidder at such sale is a purchaser for a valuable consideration, see *Hunter* v. *Watson*, 21 Cal. 363; *Perley* v. *Huggins*, 15 Cal. 137; 5 Indiana, 396, and 21 Indiana, 137.

The cases cited by appellant's counsel are generally of this class: A. is the owner of chattels. B., under some fraudulent pretense or misrepresentation, obtains possession of these chattels, and sells them to C., an innocent third party. The question then arises between A., the original owner, and C., the innocent purchaser, who shall sustain the

loss or damage caused by the fraudulent conduct of B. It has been uniformly held in such cases that if C. buys the goods in the regular course of trade, and with due care, that he may retain the goods; but if he has taken them as security, or in payment of an antecedent debt, he must yield them up to A., the original owner. But what is the reason of this latter rule? Is it because there was no consideration passed from C. to B. in payment for these chattels? It appears to us that such a proposition is ridiculous. If so, you could never discharge a preëxisting debt by the delivery of goods, because such transaction would be without consideration, and void.

But there is no such proposition in the case. There is no doubt but that the antecedent debt, as between B. and C., is a valuable consideration, and the contract is good and valid as between the parties to it. A., then, would recover the goods, not because of any invalidity in the contract between B. and C. for non-payment of a valuable consideration in such contract, but because he has a superior right to both B. and C.

But why, it may be asked, does A. recover in the one class of cases and not in the other? Simply on this principle: that when one of two innocent parties must suffer loss by the acts of a cheat or a swindler, he who, by his negligence or undue confidence, has put it in the power of the swindler to commit the fraud, must suffer the loss, rather than the party who has not been guilty of any negligence, and has placed no undue confidence in a cheat.

Then, if B. obtains the goods from A. under false pretenses, A. is supposed to have been at least slightly negligent in allowing the goods to go out of his hands. If C. buys the goods, and pays the money without any fault or carelessness whatever, he is the innocent party, and must be protected from loss even at the expense of A., who was morally innocent, but lawfully responsible for his negligence.

If, on the other hand, C. takes these goods as security for or in payment of an antecedent debt, usually he loses nothing by such transaction. When the goods are taken from him by A., he is in the same position as before—the old debt is renewed by the loss of the goods; B. is still liable for it; C. has lost nothing, except the disappointment arising from a false hope; he therefere cannot say to A.: "You must not take these goods or you will subject me to a loss." He has, in fact, lost nothing. Even if he had executed a release to B. of the old debt, it would be set aside on A.'s recovery of the goods, and he would still have his debt against B.

Again, if C. was guilty of any imprudence in the purchase; if he bought under circumstances which should have excited suspicion in a reasonable mind that B. did not come honestly by the goods, A. would recover, although C. paid actual cash for the purchase, because there would be equal fault in A. and C., and the legal title would prevail.

But under the Registry Law there is no question about who is the innocent party—who has to sustain the loss. If a bona fide purchaser pays a valuable consideration to the party who has the apparent title upon the record, whilst the real owner neglects to put his title on record, the last purchaser is protected.

The only question is, did Hodgdon pay a valuable consideration? Whether paid in money, horses, cattle, or old debts, or new debts, makes no difference.


By the Court, BELCHER, J.:

This is an action to recover the possession of certain lots in the City of Sacramento. Both parties claim title under John A. Sutter, Senior, as the common source. The case was tried in the Court below without a jury. Upon the facts found by the Court judgment was rendered in favor of

the defendant. The appeal is upon the judgment roll, and it is claimed that the Court erred in its conclusions of law.

The facts are substantially as follows: On the 15th of January, 1850, John A. Sutter, Senior, conveyed the lots in controversy to O. C. Pratt by a bargain and sale deed with covenants of warranty. The deed expressed a consideration of fifty thousand dollars, but no money consideration was actually paid. The deed was given to enable Pratt to sell and convey the lands described in the deed, and he was to have a certain percentage of the purchase money as his commissions. This deed was recorded on the 15th day of December, 1855.

On the 11th of December, 1855, Pratt, by the direction and at the request of Sutter, Senior, conveyed the lots by deed of gift to Anna Sutter, wife of Sutter, Senior. This deed purported to be made in consideration of the "esteem and respect" which the grantor had for the grantee, and was recorded on the 15th of December, 1855.

In February, 1868, Anna Sutter conveyed the lots to the plaintiff.

On the 7th of May, 1850, Sutter, Sr., conveyed to John A. Sutter, Jr., for the expressed consideration of one dollar, all his "right, title, and interest in Sacramento City, Upper California, consisting of town lots and buildings standing thereupon." Sutter, Jr., took this deed with actual notice of the deed to Pratt, and paid no consideration therefor. The deed was recorded on the 20th of May, 1850.

The defendant deraigned title to the demanded premises from Sutter, Jr., through several conveyances, purporting to convey the title, the last of which was to Humphrey Griffith, and bore date July 13th, 1852. Griffith paid no valuable consideration for the premises, and all the intermediate grantees took their deeds with actual notice of the deed to Pratt.

On the 17th of July, 1854, Griffith mortgaged the premises to Hodgdon to secure a preëxisting debt owing from

the mortgagor to the mortgagee, and at the time of receiving the mortgage Hodgdon paid no new consideration. This mortgage was in the usual form, and was taken by Hodgdon without any notice of the deed from Sutter, Sr., to Pratt. It was duly recorded on the day of its date. Hodgdon foreclosed the mortgage, and on the 25th of October, 1855 (he still having no notice of the deed from Sutter, Sr., to Pratt), at the sale under the foreclosure decree purchased the premises for six hundred and sixty-six dollars, which was credited on the decree, and satisfied about two thirds of the amount due thereon. He received the Sheriff's deed on the 2d of May, 1856.

Hodgdon afterwards entered into the actual possession of the premises, and the defendant is his tenant.

It is insisted on the part of the appellant that Hodgdon was not a purchaser for a valuable consideration within the meaning of the Registry Act, because his mortgage was made to secure a preëxisting debt, with no new consideration paid, and his bid at the Sheriff's sale was for an amount less than his judgment.

The Act concerning conveyances declares that every conveyance of real estate which shall not have been recorded, as provided in said Act, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate when his own conveyance shall have been first duly recorded.

What may constitute a valuable consideration is a question which has been much discussed, and upon which different Courts have decided differently. It is settled in this State that it must be money or the like, in contradistinction to a good consideration, though it may be greatly disproportionate to the value of the land. (*Clark* v. *Troy*, 20 Cal. 219.)

It may be the surrender, suspension, or forbearance of a legal right to process for the enforcement of the collection

of the debt, as, for example, the right to the process of attachment. (*Payne* v. *Bensley*, 8 Cal. 260; *Naglee* v. *Lyman*, 14 id. 450.)

The question whether a preëxisting debt is a valuable consideration, has usually arisen when commercial paper has been transferred by a person having no title and no right to transfer it to another, who received it in good faith, and as a mere security or payment of a preëxisting debt.

There is great conflict in the decisions; the greater number of them, it would seem, holding that a preëxisting debt is not a valuable consideration. After a careful examination of all the authorities, however, just the opposite doctrine has been announced in this State. (*Payne* v. *Bensley*, 8 Cal. 260; *Robinson* v. *Smith*, 14 id. 94; *Naglee* v. *Lyman*, id. 450.)

Unquestionably what is a valuable consideration in the case supposed of commercial paper is a valuable consideration within the meaning of those words as used in the Registry Act.

We hold, therefore, in accordance with the decisions cited, that a mortgagee, in a mortgage given for the security of a preëxisting debt, is to be regarded in this State as a purchaser for a valuable consideration. (See, also, *Work* v. *Brayton*, 5 Indiana, 396.)

Judgment affirmed.


Upon an application for a rehearing, the following opinion was rendered:


By the Court:

A rehearing is asked upon the ground that the demanded premises were not included in, and therefore did not pass by the deed of May 7th, 1850, from Sutter, Sr., to Sutter, Jr. If this be so, it is said that the point upon which the case was decided in our former opinion becomes immaterial.

The words used in the deed by way of description were: " All my right, title, and interest in Sacramento City, Upper California, consisting of town lots and buildings thereupon." It is not denied, and we think it could not be, that this description was sufficient to have conveyed the lots in controversy, if they had not been embraced in the previous unrecorded deed from Sutter, Sr., to Pratt, but it is insisted that, being a quitclaim, though it were taken in good faith, and for a valuable consideration, and first recorded, it could not prevail to convey the title as against the previous deed. In our former opinion we held that Hodgdon was to be regarded as a purchaser in good faith, and for a valuable consideration, and we still adhere to that opinion. This being so, Hodgdon is in a position to claim these lots, if Sutter, Jr. could have done so, provided he had received his deed in good faith, and for a valuable consideration. In *Graff* v. *Middleton,* 43 Cal. 341, we held that our Registry Act had made no distinction in this respect, between quitclaim deeds and other deeds, and "that a quitclaim deed received in good faith, and for a valuable consideration, which is first recorded, will prevail over a deed of older execution, which is subsequently recorded."

Rehearing denied.