[No. 22804. Department Two. April 7, 1931.]

JOHN G. PRICE, *Plaintiff*, v. NORTHERN BOND & MORTGAGE COMPANY, *Defendant*.

NATIONAL BANK OF COMMERCE OF SEATTLE, *Appellant*, v. AUGUST MALMSTEN *et al.*, *Respondents.*[1]

[1]Reported in 297 Pac. 786.

*Kerr & McCord,* for appellant.
*Peters, Powell, Evans & McLaren,* for respondents.

TOLMAN, C. J.—The parties to this proceeding are in agreement as to most of the facts, the questions in dispute being questions of law. The facts out of which the legal questions arise are substantially as follows:

In November, 1926, one Hensel, together with his wife, executed and delivered to the Northern Bond & Mortgage Company (hereinafter referred to as the mortgage company) their certain promissory note for seven thousand dollars, secured by real estate mortgage upon property which presumably was wholly adequate as security. This mortgage was duly recorded. Within a few days thereafter, the mortgage company assigned the mortgage above referred to, together with the note secured thereby, to the National City Bank of Seattle, now the National Bank of Commerce, which will be hereinafter referred to as the bank. This assignment of the note and mortgage to the bank was as security for a certain issue of bonds theretofore authorized by the mortgage company under a written agreement duly executed between itself and the bank, providing that the bank should act as trustee in the interest of those who might purchase the bonds. This trust agreement and its terms will be hereinafter more fully referred to.

Although the Hensel note and mortgage were assigned to the bank in 1926, the bank did not record the assignment of the mortgage until more than three years thereafter, and until after the mortgage company had been adjudged insolvent and placed in the hands of a receiver, the assignment being recorded January 3, 1930.

As a part of its business in lending money, taking security and selling and dealing in securities, the mortgage company devised a plan for making and selling what are described in the record as participating certificates. These certificates, by their terms, purported to convey to the particular purchaser named therein a proportionate or pro rata amount or share of a particularly named note and real estate mortgage therein definitely referred to. These were sold in the ordinary course of business to small investors, just as negotiable bonds might be sold over the counter.

The respondents in this case, without any notice or knowledge of the assignment of the Hensel note and mortgage to the bank, purchased from the mortgage company, in the regular course of business, participating certificates in the Hensel mortgage, the purchases being made at varying dates between December 1, 1926, and the middle of February following. The trial court found that these purchasers, the respondents, in each instance, were purchasers for value, without any knowledge of any rights of the bank in and to the security in which they had purchased undivided pro rata interests. In each instance, when the respondents so purchased, the participating certificate was delivered, accompanied by a mortgage title insurance policy for the amount of the respective certificate, issued by a title insurance company in good standing, the policies naming the mortgage company as the owner of the mortgage. All of these policies were issued after

the bank had received its assignment of the mortgage, and were delivered to the purchasers of participating certificates as a part of the transaction of purchase.

The mortgagors Hensel made various payments on their mortgage debt from time to time, all such payments being made to the mortgage company. The written trust agreement between the bank and the mortgage company, executed in 1922, expressly reserved to the mortgage company the right to make collections both of principal and of interest upon any and all collateral thus deposited with the bank as security. That agreement also provided that the mortgage company might withdraw any of the securities so deposited at any time by depositing with the bank a proportionate amount of the bonds which had been taken up and paid by the mortgage company. In other words, the written agreement between the mortgage company and the bank recognized the mortgage company as the owner of the securities, with power to collect, and that the bank's rights were simply to hold for the purpose of securing the outstanding bonds.

After the appointment of a receiver for the mortgage company, the mortgagors Hensel desired to pay off the balance of their mortgage debt, amounting to the sum of $5,400, and, for that purpose, secured an order in the receivership proceedings, directed against the receiver and the bank, and against the respondents here as certificate holders, requiring them to show cause why the money should not be paid to a stakeholder designated by the court, and the mortgage satisfied. All parties appeared in response, and consented that such an order be entered, and the order was made, naming the bank as stakeholder. Apparently the money was paid in and the mortgage was satisfied, and thereafter issues were made up between the bank and the respondents as to their respective claims to the money

694

thus paid to the bank. After a trial of these issues, the trial court found that the bank had been negligent in not recording its assignment of the mortgage, that the respondents had purchased their participating certificates for value and in good-faith, and that they were entitled to the money held by the bank as stakeholder; and entered judgment accordingly. From that judgment, the bank prosecutes this appeal.

Two legal questions are presented: First, is the negotiable instrument law here applicable? And, second, is a subsequent assignee of a mortgage, or an interest therein, protected by the recording statute as would be one dealing with the property as distinguished from the mortgage? Or, in other words, is there any difference in legal principle between one dealing with the property and one dealing with the security which is a lien against the property?

As to the first question, it may be well to say that there is nothing in the trust agreement between the bank and the mortgage company which was made for the protection of the bondholders, and from which their rights must be determined, which in any manner suggests that negotiable promissory notes should necessarily be taken as a part of the mortgage loans to be deposited as security, or which indicates that any of the parties thereto were in any wise concerned with the solvency of the makers of such notes, if taken, with the liability of the indorsers, or with any other feature of the negotiable instrument law which might affect the situation. The trust deed, in at least three of its provisions, clearly indicates that the bondholders, aside from the direct liability of the mortgage company evidenced by the bonds themselves, agreed to rely solely on the value of the securities deposited, and that value was considered to be not in the personal liability of the mortgagors, but in the value of the property

pledged. One of these provisions we quote from the trust deed:

"As security for the payment of the bonds or certificates of indebtedness of each series herein provided for the Northern Bond & Mortgage Company shall set over, assign and transfer to the trustee, first mortgages on real estate in Seattle and elsewhere in the state of Washington, government, state, county and municipal bonds, local improvement bonds of cities and towns and other municipal or political subdivisions, such as roads, waterways, school districts, and others of a similar class and value; school, road, local improvement, condemnation and other similarly secured warrants, and generally such securities as are bought and sold by the said Northern Bond & Mortgage Company in its regular course of business; to be held by said trustee in trust for the equal benefit and protection of the purchasers of said bonds or certificates of indebtedness, without priority as between themselves, further than specifically set forth in each and every bond or certificate issued.

"5. Securities so deposited shall be accompanied by a certificate from a title insurance company or a reputable and admitted attorney at law, showing the said security, or class of securities, to be a valid existing lien or obligation as it purports on its face to be. Said security or class shall also be accompanied by a written statement from the issuing company showing an appraised valuation of the property securing such security. . . ."

While, in general, the note is considered the obligation and the mortgage but an incident of the note which passes with it, yet no authority is here cited, and we know of none, where that rule has been applied to a state of facts such as is here shown. In most of the many cases examined which bear upon the second question, notes were given evidencing the mortgage debt, but in none of them was the negotiability rule of primary importance in reaching a decision. We are convinced that here all parties were concerned only

with the mortgage as such, that no one took thought of the note as an independent or personal obligation, and that, under these conditions, the note must be regarded as an incident of the mortgage, which is a lien upon, and therefore an interest in, real estate, and was the real consideration.

■ Coming to the second question, our statutes applicable are Rem. Comp. Stat., § 10596, which reads:

"All deeds, mortgages, and assignments of mortgages, shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against bona fide purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world."

The language, ". . . shall be valid as against *bona fide* purchasers from the date of their filing . . ." very clearly indicates that, if the rights of *bona fide* purchasers attach before such filing, they must prevail.

The legislature of 1927, by chapter 278, Session Laws of 1927, pp. 670, 671, in terms repealed § 10596, just quoted, and in lieu thereof enacted the following:

"Section 1. (1) The term 'real property' as used in this act includes lands, tenements and hereditaments and chattels real and mortgage liens thereon except a leasehold for a term not exceeding two years.

"(2) The term 'purchaser' includes every person to whom any estate or interest in real property is conveyed for a valuable consideration and every assignee of a mortgage, lease or other conditional estate.

"(3) The term 'conveyance' includes every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected, including an instrument in execution of a power, although the power be one of revocation only, and an instrument releasing in whole or in part, postponing or subordinating a mortgage or other lien; except a will, a lease for a term of not exceeding two

years, an executory contract for the sale or purchase of lands, and an instrument granting a power to convey real property as the agent or attorney for the owner of the property. 'To convey' is to execute a 'conveyance' as defined in this subdivision.

"(4) The term 'recording officer' means the county auditor of the county.

"Sec. 2. A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record;"

which in terms makes void as against a subsequent purchaser or mortgagee in good faith an unrecorded assignment of a mortgage.

Section 10616, permitting the assignment of mortgages, and, after the recording of such assignment, permitting the assignee to discharge the mortgage of record, in no manner lessens the effect of what has been quoted.

We have examined and read with care the very many authorities cited by counsel upon either side, and, after careful analysis, we find none which is in principle so far opposed to the rule we have already announced in *Erickson v. Kendall,* 112 Wash. 26, 191 Pac. 842, as to call for a re-examination or a re-discussion of the subject. Indeed, when the controlling facts are carefully considered, we are convinced that the great weight of all of the authorities supports the rule of the *Erickson* case.

To re-state the facts of the *Erickson* case and draw the deadly parallel, would require too much space; but

if that case is carefully read, it will be found to support fully the trial court's judgment on every phase of this case, with one possible exception. There, as here, there was a note evidencing the mortgage debt; there, as here, the note and mortgage were assigned and the assignment of the mortgage was not recorded; there, as here, the original mortgagee had authority to collect, but there collection was made from the purchaser of the property, instead of by re-selling the mortgage. In the light of the language used in our statute, already quoted, it would seem to be a forced construction to hold that an unrecorded assignment was invalid as against an innocent purchaser of the property, and yet valid as against an equally innocent purchaser of the mortgage itself.

Indeed the 1927 act in exact terms says that the term "purchaser includes every person to whom . . . is conveyed . . . and every assignee of a mortgage, . . ." Since the participating certificates assigned the Hensel mortgage pro rata to respondents, they come directly within the terms of the 1927 act, but, as respondents purchased prior to the taking effect of that act, and their rights must be determined by the act then in force, its language, as hereinbefore re-quoted, must, we think, be given the same effect.

"The effect of recording an assignment is not only to protect the assignee against a subsequent sale of the mortgage by the apparent holder of it, but also to prevent a wrongful discharge of it by the mortgagee." 1 Jones on Mortgages (8th ed.), § 596.

"An assignee of a mortgage is a purchaser, and is entitled to the protection of the recording acts as much as a purchaser of the equity of redemption." 1 Jones on Mortgages (8th ed.), § 598.

*Parmenter v. Oakley,* 69 Iowa 388, 28 N. W. 653; *Murphy v. Barnard,* 162 Mass. 72, 38 N. E. 29; *Blunt*

*v. Norris,* 123 Mass. 55; *People's Trust Co. v. Ton-konogy,* 128 N. Y. Supp. 1055.

We have not overlooked the fact that respondents, in dealing with the mortgage company, did not demand a production of the original mortgage, relying only upon the title insurance hereinbefore referred to, which showed the mortgage company to be the owner of record of the mortgage at the time they were acquiring their interests. Neither did the owner of the property in the *Erickson* case demand a production of the note when he paid the mortgage debt. In both cases, the person parting with his money relied upon the record title.

In this case, as in the *Erickson* case, it must be held that the wrong was perpetrated because of the negligent withholding of the assignment of the mortgage from record, and that, if the assignment had been recorded in a timely manner, in neither case would a wrong have resulted, or, if so, then the person parting with his money in the face of a recorded assignment would himself have been so negligent as to be entitled to no relief.

The judgment of the trial court is affirmed.

MILLARD, BEALS, and BEELER, JJ., concur.