[No. 30186. Department Two. September 23, 1947.]

R. E. CUNNINGHAM et al., *Appellants*, v. NORWEGIAN LUTHERAN CHURCH OF AMERICA et al., *Respondents.*[1]

[1]Reported in 184 P. (2d) 834.

*Clarence J. Coleman* and *Thomas G. McCrea,* for appellants.

*Newton & Newton* and *Lewis A. Bell,* for respondents.

HILL, J.—The appellants appeal from a judgment dismissing their action in ejectment and quieting title in the respondent Trinity Lutheran Church, which will be referred to herein as though it were the only respondent. The Hillman Investment Company, a corporation, through which both parties claim title, had, prior to September 17, 1943, extensive real estate holdings in Snohomish county. The appellant R. E. Cunningham, who will be referred to herein as though he were the only appellant, bought the tract involved herein from that company, the deed being dated August 18, 1942. The tract is located in the SE¼ of the SE¼ of section 17, township 27 North, range 4 East of Willamette Meridian, but was erroneously described in the deed as being in the SW¼ of the SE¼ of that section. This deed was not recorded until August 31, 1945.

In September, 1943, the Hillman Investment Company sold and conveyed all its holdings in Snohomish county to a copartnership consisting of David Young, Lester Eastman, and Richard Shorett, who will hereafter be referred to as Young *et al.,* giving the proper legal description for all property which its records indicated it still owned in that county; but, because its records were not perfect and the properties were numerous and omissions possible, it also executed, on September 17, 1943, a statutory quitclaim deed whereby it conveyed to Young *et al.,*

" . . . all interest in the following described real estate, situated in the County of Snohomish State of Washington:

"All property in Snohomish County owned by the Grantor . . ."

These deeds were promptly placed of record, the recording date on the quitclaim deed being September 30, 1943.

The tract involved in this proceeding is adjacent to property on which the respondent has a chapel; and, as the

church wanted to expand and increase its facilities, particularly for Sunday school purposes, it had an investigation made in the summer of 1945 to determine who owned that tract. The church was advised that the record title was in Young *et al.*, and it entered into negotiations with them for acquisition of the tract. It paid the purchase price asked, one hundred dollars, and secured a quitclaim deed from Young *et al.*, which was recorded on July 31, 1945. It is to be noted that there was nothing of record, and nothing on or about the property, to indicate that appellant had any interest therein. There were "Cut No Trees" signs on the property, but nothing to indicate who had placed them there.

The church then prepared to build. The land was bulldozed and some excavation for a foundation made before appellant notified it that he claimed title to the land in question.

Appellant thereafter, on August 31, 1945, recorded his deed, in which, as we have noted, the property was described as being in the SW¼ of the SE¼ instead of the SE¼ of the SE¼. Appellant commenced this action in ejectment in January, 1946, and respondent answered asking that title be quieted in the Trinity Lutheran Church.

The facts and the law applicable thereto seem to be quite clear. The respondent was a bona fide purchaser of the property for value, relying on a clear record title. It had no knowledge, actual or constructive, of appellant's claim to ownership.

■ Appellant urges very briefly that respondent was not a bona fide purchaser, because it paid only one hundred dollars for a piece of property worth fifteen hundred dollars. The circumstances surrounding that transaction show a desire on the part of Young *et al.* to assist the church, and There was nothing about the situation to deprive the church of its status as a bona fide purchaser for value. Before it had acquired any knowledge of appellant's claim of title, respondent had also paid for a title insurance policy and had expended $457.50 preparing the property for the building

which it planned to erect, and considerable volunteer labor had been performed by church members.

We had occasion, in *Peterson v. Paulson,* 24 Wn. (2d) 166, 163 P. (2d) 830, to consider the question of what constitutes a bona fide purchaser for value, and respondent comes squarely within the definition there laid down.

■ From the beginning, we have held without deviation that a bona fide purchaser of real property may rely upon the record title. In *Beckmann v. Ward,* 174 Wash. 326, 24 P. (2d) 1091, we cited a number of cases, and we have since affirmed that principle on numerous occasions, notably in *Dunn v. Neu,* 179 Wash. 351, 37 P. (2d) 883, and *Bremerton Creamery & Produce Co. v. Elliott,* 184 Wash. 80, 50 P. (2d) 48. In the latter case, we said:

"Sections 10596-1 and 10596-2 [of Rem. Rev. Stat.] [P. C. §§ 1914-1 and 1914-2], *supra,* enacted in 1927, undoubtedly indicate a legislative intention to make the recording acts of this state more stringent as against one having an unrecorded right in land, and in favor of a purchaser without notice of such claim. Since the passage of this act, we have, when called upon to construe the same, recognized that principle in an endeavor to carry into effect the legislative intention. *Price v. Northern Bond & Mortgage Co.,* 161 Wash. 690, 297 Pac. 786; *Kroetch v. Hinnenkamp,* 171 Wash. 518, 18 P. (2d) 491; *Richards v. Lawing,* 175 Wash. 544, 27 P. (2d) 730; *Dunn v. Neu,* 179 Wash. 351, 37 P. (2d) 883."

One of the best statements of the basis for and the logic of the rule is found in *Kroetch v. Hinnenkamp,* 171 Wash. 518, 18 P. (2d) 491. This was an action to quiet title. The plaintiff had purchased certain lots in Spokane in 1910 and received a warranty deed therefor. The deed was not filed for record until September 28, 1931. In the intervening time, plaintiff had paid the taxes on these lots, but they were at all times vacant, unoccupied, and unimproved. In 1929, the plaintiff's grantor quitclaimed the lots to a real estate firm, which conveyed them to one Johnson, who, on April 23, 1931, conveyed by warranty deed to the defendant, who purchased the property in good faith and for a valuable consideration. The deeds in the defendant's chain of title were

all placed of record before the deed to the plaintiff was recorded.

The trial court refused to quiet title in the plaintiff, and this court affirmed the judgment. After quoting the recording statute (Rem. Rev. Stat., § 10596-2 [P.P.C. § 500-3]), the court said:

"We think it was the intent of the legislature in § 2 [Laws of 1927, chapter 278, p. 611, § 2, being Rem. Rev. Stat., § 10596-2] mentioned, by the use of the word 'void,' to convey the meaning that a prior unrecorded deed as against a subsequent conveyance of the same property, but recorded first, should not be valid for any purpose, and that the rights under the deed first recorded should prevail. If this is not the meaning of the statute, an intolerable situation would result. Before a person could safely take a conveyance of vacant and unoccupied property, even though the record showed a perfect title in his grantor and all taxes paid, it would be necessary for the purchaser to inquire as to who paid the taxes and whether they were paid by the same person for seven successive years, and then ascertain, entirely dehors the record, whether the person so paying the taxes had a deed or other instrument in writing which would constitute color of title.

"It appears to us that the legislature must have intended, by the recording act, to make the deed first recorded superior to any outstanding unrecorded conveyance of the same property. It is important that a purchaser of real property, for a valuable consideration and in good faith, may rely upon a title which the record shows to be in his grantor, and that he is not required, in the absence of notice, and there is no such question in this case, to make inquiry as to the status of the title outside of that shown by the recorded conveyances and the payment of taxes."

Since respondent is a bona fide purchaser for value, relying on the record title, the door would seem to be firmly and definitely closed to appellant's claim. However, he strenuously urges that, because the quitclaim deed from Hillman Investment Company to Young *et al.* conveyed "All property in Snohomish County *owned* by the Grantor," title to the tract in question did not pass to Young *et al.* Appellant's reasoning is that Hillman Investment Company did not *own* this tract, and that there was no intention to

convey it by the quitclaim deed; and that, therefore, the quitclaim deed given Young *et al.*, who intended to receive only what the Hillman Investment Company owned and had not conveyed, conveyed no title to the tract; and that, consequently, Young *et al.* could convey no title or interest in and to the tract in question to the respondent; and the recording statute cannot create a title.

As we understand it, the word "owned" is the basis of appellant's argument. Applied to this case, his claim is that, if the quitclaim deed from Hillman Investment Company had conveyed "all grantor's right, title, and interest in and to any property in Snohomish county," the respondent would be protected (assuming it to be a bona fide purchaser for value) against the claims of those holding unrecorded deeds; but, since the quitclaim deed conveyed "all property in Snohomish County owned by the Grantor," respondent would not be protected against the claims of those holding any such unrecorded deeds.

This argument would reduce the blanket quitclaim deed to a practical nullity, because it says, in effect, that there can be no such thing as a bona fide purchaser under such a deed, for anyone claiming thereunder would be charged with the knowledge that there might be unrecorded deeds, and that, if there were, the grantees thereunder would be entitled to the property.

We are not disposed to have record titles upset and rendered uncertain by any such niceties of distinction in legal verbiage. In *Merrill R. & Lighting Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686, it is said:

"Thus it appears very clearly that the word 'owned' is not a technical term; that it is a general expression to describe a great variety of interests, and may vary in significance according to context and subject matter."

That being so, whatever may be the law elsewhere, we hold that when a person quitclaims all property *owned* by him in a certain locality, he thereby transfers, *so far as bona fide purchasers for value are concerned,* all property in that locality to which he holds record title at the time of

the conveyance. As to such bona fide purchasers for value, any outstanding unrecorded deed under such circumstances would be a nullity.

Much that is said by appellant might have great weight in litigation between appellant, the Hillman Investment Company, and Young *et al.*, but what their intentions may have been as between themselves is of no concern to a bona fide purchaser for value relying on the record they have made. It is clear to us that, *entirely apart from the recording statutes*, Hillman Investment Company *owned* the legal title to the tract in question when it executed its quit-claim deed, and it thereby conveyed all interest in that legal title to Young *et al.*, and they, in turn, conveyed it to respondent. It is a legal title deraigned from Hillman Investment Company and is not created by the recording statute.

When the cases cited by appellant are analyzed, it is found that in practically every instance the court was not passing upon the rights of bona fide purchasers for value relying on a record title. For instance, in *Adams v. Cuddy*, 30 Mass. (13 Pick.) 460, 25 Am. Dec. 330, the parties claiming under the recorded deeds had knowledge of the unrecorded deed; and in *Fitzgerald v. Libby*, 142 Mass. 235, 7 N. E. 917, the situation would have been comparable to the present case if Trinity Lutheran Church, conceding that there was a defective title, was seeking to recover its money from Young *et al.* In fact, in *Dow v. Whitney*, 147 Mass. 1, 16 N. E. 722, cited by appellant, the court distinguishes between the two cases just referred to, together with *Jamaica Pond Aqueduct Corp. v. Chandler*, 91 Mass. (9 Allen) 159, by saying:

"In each of these cases the question was not as to the effect of a prior unrecorded deed of the same land, but it was whether the land previously sold was included within the description of the later deed. In other words it was a question of the construction of the deed relied upon."

Two cases from California, closely analogous on the facts except that they did not use the word "owned," are of interest. In *Frey v. Clifford*, 44 Cal. 335, the facts were as follows:

On January 15, 1850, John A. Sutter, Sr., conveyed the lots in controversy to O. C. Pratt, which deed was not recorded until December 15, 1855. On May 7, 1850, John A. Sutter, Sr., conveyed to John A. Sutter, Jr., all his "right, title, and interest in Sacramento City, Upper California, consisting of town lots and buildings standing thereupon." This deed was recorded May 20, 1850. Sutter, Jr., took this deed with notice of the deed to Pratt, and paid no consideration therefor. Defendant deraigned title to the lots through several conveyances, the first of which was from Sutter, Sr., to Sutter, Jr., and the last of which was to Humphrey Griffith, on July 13, 1852. Griffith paid no valuable consideration for the premises, and he and all the intermediate grantees took their deeds with actual knowledge of the deed to Pratt. On July 17, 1854, Griffith mortgaged the premises to one Hodgdon, which mortgage was to secure an antecedent debt. Hodgdon had no notice of the deed from Sutter, Sr., to Pratt. The mortgage was recorded on the day of its date. (All of the deeds in this chain of title had been recorded prior to that date.) Thereafter, Hodgdon foreclosed the mortgage, and, on October 25, 1855, he bought the lots in question at sheriff's sale. Hodgdon received the sheriff's deed on May 2, 1856, and went into possession. The defendant in the action was his lessee.

The deed from Sutter, Sr., to Pratt went on record December 15, 1855, and on the same date a deed dated December 11, 1855, from Pratt to Anna Sutter, covering these lots, was recorded. In February, 1868, Anna Sutter conveyed the lots to the plaintiff. The plaintiff sued to recover possession, and judgment was rendered in favor of the defendant, which judgment was affirmed on appeal. Hodgdon was held to be a bona fide purchaser for value and entitled to the protection of the recording statutes. The only question discussed at length in the original opinion was whether, since the mortgage had been given to secure an antecedent debt, the mortgagee could be said to have given a valuable consideration.

On a petition for rehearing, the question was raised that

appellant raises here; *i. e.,* that, the lots having been previously conveyed, nothing passed by the deed of May 7, 1850, from Sutter, Sr., to Sutter, Jr. The court said:

"The words used in the deed by way of description were: 'All my right, title, and interest in Sacramento City, Upper California, consisting of town lots and buildings thereupon.' It is not denied, and we think it could not be, that this description was sufficient to have conveyed the lots in controversy, if they had not been embraced in the previous unrecorded deed from Sutter, Sr., to Pratt, but it is insisted that, being a quitclaim, though it were taken in good faith, and for a valuable consideration, and first recorded, it could not prevail to convey the title as against the previous deed. In our former opinion we held that Hodgdon was to be regarded as a purchaser in good faith, and for a valuable consideration, and we still adhere to that opinion. This being so, Hodgdon is in a position to claim these lots, if Sutter, Jr., could have done so, provided he had received his deed in good faith, and for a valuable consideration."

In *Dunn v. Farrow,* 101 Cal. App. 209, 281 Pac. 506, the common grantor, Emil R. d'Artois, was the record owner of numerous lots in the town of Rosecrans. On June 20, 1892, he conveyed, by grant, bargain, and sale deed, lots 5, 6, and 7 in block "E" to Mrs. James Carroll. She recorded her deed June 20, 1894. (Analogy: Hillman Investment Company deed to appellant Cunningham.)

Thereafter, d'Artois granted and sold a large number of lots in the town of Rosecrans, not including lots 5, 6, and 7 in block "E," to W. E. de Groot. (Analogy: Hillman Investment Company deed of specifically described property in Snohomish county to Young *et al.*)

D'Artois quitclaimed to Adelaide d'Artois all of his right, title, and interest in and to the townsite of Rosecrans, and she quitclaimed all of her interest in and to that townsite to W. E. de Groot. (Analogy: Hillman Investment Company quitclaim deed of all property owned in Snohomish county, to Young *et al.*)

W. E. de Groot quitclaimed lots 5, 6, and 7 of block "E" to Dunn, who was a bona fide purchaser for value and who went into possession. (Analogy: Young *et al.* deed to respondent Trinity Lutheran Church.)

All of these conveyances subsequent to the one to Mrs. Carroll were recorded prior to the twelfth day of November, 1892. As noted, Mrs. Carroll did not record her deed until June 20, 1894. Farrow claimed under Mrs. Carroll.

We have an almost perfect analogy with the present case. Title was quieted in Dunn, and the judgment was affirmed. The court said:

"The right of the plaintiff [Dunn] to succeed in this action depends upon the effect of the conveyance of Emil R. d'Artois to Adelaide d'Artois of all his right, title and interest in and to the town site of Rosecrans, and the deed by Adelaide d'Artois conveying all her right, title and interest in and to the town site of Rosecrans to William E. de Groot, and the subsequent conveyance of William E. de Groot, to the plaintiff, of lots 5, 6 and 7 in block 'E' of the town site of Rosecrans. All these instruments were recorded long prior to the recording of the conveyance under which the appellant [Farrow] claims. The conveyance to the plaintiff was made on the third day of November, 1892, and was recorded on the twelfth day of November, 1892. The conveyance under which the appellant claims purports to have been executed on the twentieth day of June, 1892, but was not recorded until the twentieth day of June, 1894. . . .

"A large number of eastern cases are cited by appellant which, if the rules of law therein stated were applicable here, judgment of reversal would necessarily follow. These decisions, however, are rendered inapplicable by reason of the provisions of section 1214 of the Civil Code relative to the recording of instruments of conveyance, by which it is provided that an unrecorded instrument is not good as against a subsequent one where the subsequent purchase has been made in good faith and for a valuable consideration. . . . To the same effect is the case of *Frey v. Clifford*, 44 Cal. 335. There, the quitclaim deed was identical in its terms with the instruments attacked in this case. The quitclaim deed in the *Frey* case read as follows: 'All my right, title and interest in Sacramento City, Upper California, consisting of two [town] lots and buildings there[up]on.' In the case of *Flores v. De Flores*, 55 Cal. App. 595 [204 Pac. 54], we find the following: 'A deed conveying all the lands of the grantor is not void for uncertainty of description, and passes title to all lands in which he has an interest. . . .'

"The court held that the title was taken in good faith,

and for a valuable consideration; that the plaintiff had no knowledge, either actual or constructive, that any person claimed to have any right, title or interest in the premises; that the consideration paid by the plaintiff was fair and reasonable.

*"Whatever the law may be in other states, under the circumstances which we have detailed and the cases cited, it is not apparent how any other judgment could be rendered in this case than was rendered quieting the plaintiff's title to the lots in controversy."* (Italics ours.)

█ When we apply the rule of comparative innocence, it is impossible to escape the conclusion that the judgment must be affirmed. As between two innocent persons, one of whom must suffer a loss, appellant is obviously the one who is responsible therefor. He failed to have his property correctly described in his deed and then failed to have it recorded. He failed to do as the ordinarily prudent and cautious individual does, require some evidence of title by way of abstract or title insurance, which would have revealed the defective description. Had he even placed his name on the "Cut No Trees" signs on the property, a different situation might be presented. Appellant had ample opportunity to protect himself and did nothing. Respondent did everything that could be expected of it.

Appellant urges that he is at least entitled to a new trial because the trial court erred in excluding evidence offered to show that Hillman Investment Company did not intend to convey the tract involved in this action by its quitclaim deed, and that Young *et al.* paid nothing for it.

█ If the evidence had been admitted, our ruling would be the same. What the Hillman Investment Company and Young *et al.* intended or what consideration was given for the property is immaterial so far as the respondent is concerned. As a bona fide purchaser for value, Trinity Lutheran Church was entitled to take the record title at its face value. The exceptions as to the trial court's rulings on questions of evidence are without merit.

The judgment is affirmed.

Mallery, C. J., Steinert, Robinson, and Jeffers, JJ., concur.