## Rosenbaum *et al.* v. Foss *et al.*

1. A. gave a chattel mortgage to B. on personal property therein specifically described. He afterwards gave another chattel mortgage to C. on all

his "right, title, and interest in and to" the same personal property. *Held,* that C's mortgage was not of the same property rights previously mortgaged to A.

2. There being no hostility between the first and second mortgage, C. was not in position to attack the validity of the filing of the mortgage to B.

3. The mortgage to B. being good as between A. and him, it was good as against C., who took by his mortgage only what "right, title and interest" A. had when he made the mortgage to C.
CORSON, P. J., dissenting.

(Syllabus by the Court. Opinion filed May 22, 1895.)

Appeal from circuit court, Kingsbury county. Hon. J. O. ANDREWS, Judge.

This case was first decided by this court in an opinion found in 4 S. D. 184, in which opinion the judgment of the trial court in favor of plaintiffs was modified and affirmed. Defendants petitioned for a rehearing which was granted. This opinion is upon rehearing. Former decision reversed.

The facts are stated in the opinion.

*W. B. Sterling* and *Wilson & Bowers,* for appellants.

One who takes a chattel mortgage as security for a pre-existing debt, is not a "taker in good faith for value." People v. Bates, 120 U. S. 556; Young v. Guy, 87 N. Y. 457; De Lancy v. Stearns, 66 N. Y. 157; Weaver v. Burden, 49 N. Y. 286; Ashton's Appeal, 73 Pa. 153; Walker v. Abby, 42 N. W. 519; Brigham v. Highland, 6 N. Y. 75; Bragg v. Paulk, 42 Maine 502; Mings v. Condit, 23 N. J. 313; Clark v. Flint, 22 Pick. 231; Gist v. Packwood, 34 Fed. 368.

In order for plaintiff to attack defendant's mortgage, because not properly filed it is encumbent upon them to show that they took a bill of sale of the property covered by such mortgage in good faith for value. Newton v. Newton, 46 Minn. 33; Nolan v. Grant, 5 N. W. 513; Ransom v. Schmela, 12 N. W. 926; Gardner v. Early. 34 N. W. 311; McNeel v. Finnegan, 33 Minn 375.

The covenants in a conveyance cannot enlarge the grant beyond the terms of the description. Henrick v. Patrick, 119 U. S, 156.

The rule that the grantee only of the "right, title and interest" of the grantor cannot attack a previous unrecorded conveyance applies, even though the second conveyance contains express covenant of warranty. Brown v. Jackson, 3 Wheat. 449; Coe v. Persons, 43 Me. 442; Hope v. Stone, 10 Minn. 141; Allison v. Thomas, 14 Pac. 309. Assignees for the benefit of creditors are unable to question unfiled chattel mortgages or unrecorded real estate mortgages. Caffey on Chattel Mortgages, § 658; Stuart' v. Platt, 101 U. S. 731.

*J. F. Watson* and *A. B. Melville,* for respondents.

A pre-existing indebtedness is a good and valuable consideration. Henry v. Vliet, 49 N. W. 1107; Kranert v. Simon, 65 Ill. 344; Butters v. Haughwont, 42 Ill. 18; Piine v. Benton, 32 Wis. 491; Slinfeldt v. Pease, 16 Wis. 659; Frey v. Clifford, 44 Cal. 335; Gassen v. Hendricks, Cal. 16, Pac. 242; Knox v. McFarren, 4 Colo. 586; Herman Chattel Mortgages § 52; Jones Chattel Mortgages, § 81; McMaster v. Redell, 13 Pac. 183; Clark v. Barnes, 34 N. W. 419; Cutter v. Steele, 85 Mich. 627; Poyre v. Bensley, 8 Cal. 260.

One who takes property in payment or security of a pre-existing debt, is to be regarded as a purchaser for a valuable consideration. Hilliard on Mortgages, 610; Herman on Mortgages, § 52; Babcock v. Jordon, 24 Ind. 14; Milford v. Milford, 9 Ves. 100; Bagley v. Greenleaf, 7 Wheaton 46; Roberts v. Salsbury, 3 Gill, 425; Gann v. Chester, 5 Yerger 205; Paine v. Benton, 32 Wis. 491; Stoddard v. Kimball, 6 Cush. 469; Storey on Bills § 192; Bank v. Chapin, 8 Met. 40; Atkinson v. Brooks, 26 Vet. 569; Louthian v. Miller, 85 Ind. 161; Hewitt v. Powers, 84 Ind. 295; McLaughlin v. Wood, 7 Ind. 383; Machette v. Wonless, 1 Colo. 225; Turner v. McLee, 61 Ala. 406; Crowilm v. McCauley, 67 Ala. 542; Loubenheimer v. McDermott, 5 Mont. 512. A satisfaction of a pre-existing debt makes a *bona fide* purchaser not affected by previous equity. Love v. Taylor, 26 Miss. 574; Fair v. Howard, 6 Nev. 304. One who takes a conveyance of property, expressly subject to a prior encumbrance, is bound by said prior encumbrance. Pecker v. Silsby, 123 Mass. 108; Eaton v. Tuson, 13 N. E. 488.

KELLAM, J.    This case, the opinion in which is published in
4 S. D. 184, 56 N. W. 114, is now before us on rehearing.  Per-
haps the following facts may be profitably restated:  Prior to
June 23, 1884, Charles W. Seefield was the owner of certain grain
elevators and a flouring mill situated on leased lands in different
counties of this state, and along the track of the Chicago & North-
western Railway.  Upon that day he executed and delivered to ap-
pellants a chattel mortgage on the same, by which, as stated in
such mortgage, he did "grant, bargain, sell, assign, and transfer
*   *   *   all that certain personal property located and described
in the Schedule A, hereto attached."  In such schedule the prop-
erty now in question was described as one grain elevator, situate
on the north side of the railway track, in the village of Elkton,
Dakota, known as 'Seefield's Elevator,' and one steam flouring
mill and elevator, situated on south side of railway track in the
village of Nordland, Dakota (now Denver station), known as 'See-
field's Mill and Elevator,' all of said elevators," etc., "being situ-
ated on railway property."  This mortgage was renewed by appel-
lants, as provided by statute.  On the 7th day of July, 1888, See-
field, being the owner thereof, made and executed to appellants
another chattel mortgage by the terms of which he did "grant,
bargain, sell, assign, transfer, and make over" unto appellants "all
that certain property described as follows: One grain elevator, sit-
uate on the north side of the railway track, in the village of Elk-
ton, Dakota, known as 'Seefield's Elevator'; also the steam flour-
ing mill and elevator situate on the south side of the railway track
in the village of Arlington, Dakota, known as 'Seefield's Mill and
Elevator,' together with and including all machinery, fixtures and
furniture in each of said buildings, and the implements connected
therewith.  Said buildings and property are all situate upon rail-
way land, and are now in my possession, in the places in which
they are hereinbefore, respectively, stated to be situate."  In our
former opinion it was held upon the facts shown by the court's
findings, and for reasons fully stated in such opinion, that the
mortgages were not so filed as to carry constructive notice of their

contents. Subsequently, and on the 10th day of January, 1889, the said Seefield, still being the owner of said property, made and delivered to the respondents a bill of sale, which the court finds "was to take the place of and operate as a mortgage upon the property therein described," for the amount named as the consideration, which bill of sale was, so far as pertinent to the question we desire to discuss, as follows: "For and in consideration of the sum of twenty-five thousand dollars to me in hand paid by Rosenbaum Brothers, the receipt whereof is hereby acknowledged, I hereby sell, assign, and make over to said Rosenbaum Brothers all my right, title and interest in and to that certain roller flouring mill," etc., the mill referred to being the same one covered by the prior mortgage to appellants. It is found by the trial court that respondents took this bill of sale or mortgage without actual notice of either of the mortgages to appellants. The relief sought in the action was the cancellation from the files of the copies of appellants' mortgages which had been filed as clouds upon respondents title. The reargument was allowed for the discussion of two questions: (1) Was the only consideration for respondents' bill of sale or mortgage an antecedent indebtedness, and, if so, were respondents purchasers or incumbrancers for value? (2) Did the transfer to respondents by Seefield of "all his right, title and interest in and to" the property which he had previously mortgaged to appellants entitle respondents to attack the record of appellants' mortgages? We shall examine only the second question.

It seems to us that the question thus presented is substantially different from that which determines the right of a party grantee in a purely quitclaim deed, and that the real question here is, did Seefield undertake to sell and convey to Rosenbaum the same property which he had theretofore undertaken to sell and convey to Foss? If he did, then Rosenbaum's rights are paramount. Section 4379, Comp. Laws, provides that "a mortgage of personal property is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith for value, unless the original, or an authenticated copy

thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." The obvious purpose of this statute is to protect a purchaser or incumbrancer of personal property from a prior conveyance or mortgage of the same property; of which such later purchaser or incumbrancer had no notice, actual or constructive. It is essential, therefore, that the later conveyance cover the same property rights as the prior one; for otherwise there would be no hostility between them, and there would be no ground for preferring one to the other. In the case before us Seefield undertook by his prior mortgages to convey to appellants Foss & Co., certain tangible and defined pieces of personal property. Subsequently he undertook to convey to respondents Rosenbaum, not the property itself, but his "right, title, and interest" to and in a part of it. Both instruments contained affirmative words of sale, and both specifically define the subject of the sale, and each must be taken to cover just what it defines as the subject of the transfer. Before there can be a case for said section 4379 to operate upon, it must appear that the earlier and later instruments of conveyance purport to convey to different persons property rights that are in whole or in part, in conflict. If the second instrument does not purport to convey any of the rights that the first instrument includes, there is no inconsistency or conflict between them, and each party will take just what was conveyed to him. In any case, what is really sought to be sold or conveyed is primarily a question of the intention of the parties. In this case it is fair to assume that Seefield himself did not intend to convey to the Rosenbaums the very same property rights that he had already conveyed to Foss & Co.; for, first, he conveyed the property itself bodily; and, knowing this, his next conveyance, being that to the Rosenbaums, was only of his "right, title, and interest" in and to such property. If, however, the law itself, in a case like this, definitely fixes the meaning of the second description as identical with the first, the rights of the parties must be settled accordingly. That this is so is the vigorous contention of respondents. They say

that section 3242, Comp. Laws, provides that a "transfer vests in the transferee all the actual title to the thing transferred, which the transferrer then has unless a different intention be expressed or necessarily implied." This, however, does not seem to afford very solid ground for a starting point, for in this case the troublesome question still is, what was "the thing transferred"? There can be no doubt that the "actual title" of the transferrer to "the thing transferred" passed to the transferee under this section, but by it alone Rosenbaum would have taken subject to the Foss mortgages, for that would have been the extent of Seefield's "actual title." If Rosenbaum takes more than Seefield had left after his conveyance to Foss, it is not by force of this statute, but because the failure of Foss to file his conveyance has the effect, as to Rosenbaum, to enlarge the subject of the conveyance; for, if Foss' conveyance had been properly filed, there would be no question but that the conveyance to Rosenbaum covered simply Seefield's remaining interest. Suppose Seefield, instead of mortgaging to Foss, had actually sold him an undivided interest in this personal property, for which Foss in good faith had paid him an adequate consideration, the entire property remaining in Seefield's actual and visible possession as before, and subsequently Seefield had mortgaged to Rosenbaum "all his right, title, and interest in and to" the same property, and Rosenbaum without actual notice of the prior sale of the undivided interest to Foss, had filed his mortgage, would the interest and title of Foss be thus cut off? It would seem so, if respondent's contention is correct; for section 4657 makes a transfer of personal property void as against subsequent purchasers or incumbrancers, if not followed by actual and continued change of possession. If this would be really the legal effect of the conditions named, then Rosenbaum might take much more than Seefield ever intended to sell to him, and thus compel Seefield, as said by SHAW, C. J., in Adams v. Cuddy, 13 Pick. 463, to "in effect commit a fraud, without intending or even being conscious of it."

Respondents cite many cases which plainly state that a recorded quitclaim deed takes precedence of a prior unrecorded

warranty deed, and appellant's reply with many others holding a
contrary rule. Many of these discrepant holdings are accounted
for in the opinions themselves, by peculiarities in the registration
laws under which the cases arose, but it seems to us that the
question is one of construction and intention. The term "quit-
claim deed" has come to be applied to a great variety of convey-
ances, from a simple release to an absolute grant without coven-
ants, and it certainly is not reasonable to assume that the parties
intended the same thing whether they used the former or the lat-
ter. The doctrine contended for by respondents, that a deed first
recorded, of the grantor's "right, title and interest," will prevail
over a prior unrecorded deed of the land itself, of which the taker
under the first mentioned deed had no notice, is fully sustained by
cases cited by respondents, of which Woodward v. Sartwell, 129
Mass., 210 is representative. The doctrine was in that case carried
to its logical and inevitable result, and the court concluded and
held that an attachment would lie, in an action against the grantor,
against land previously conveyed by him, the conveyance of which
had not been recorded, and of which the attaching creditor had no
actual notice. The argument of the opinion is that, the prior con-
veyances not being recorded, the grantor has a record title, and
that it may be attached, and that a subsequent sale by the officer
of all the grantor's "right, title and interest" in the land so con-
veyed by the unrecorded deed relates back to the date of the at-
tachment, and conveys the land itself, notwithstanding such deed
may have been duly recorded intermediate the attachment and the
sale. Without now stopping to discuss this question, we are so
fully satisfied that such a holding here would summarily reverse
the settled understanding of the law in this jurisdiction that we
should hesitate to adopt a rule of construction that would directly
lead to the conclusion reached by the Massachusetts court. The
question in this case is, and it seems to us must be, whether, where
one conveys property specifically described by a confessedly
honest deed, and subsequently conveys to another "all my right,
title and interest in and to" the same property, the second convey-

ance covers the same property rights as the first. We hold that it does not, and such conclusion finds strong support in many cases. In Gress v. Evans, 1 Dak. 394, 46 N. W. 1132, the trial court held that where a deed "simply purports to pass the right, title, interest, claim, or demand" of the grantor, the grantee does not obtain anything which the grantor had previously parted with, although the subsequent deed was first recorded. The judgment was affirmed on other grounds, but in respect to this proposition the supreme court, by SHANNON, C. J., said that although the authorities were somewhat conflicting, there was "much to sustain the position assumed" by the trial court. In Brown v. Jackson, 3 Wheat. 449, it was held that a prior deed of described land, though unrecorded, took precedence over a second deed, purporting to convey only the right, title and interest which the grantor had at the time of its execution. The court said: "Upou any other construction, the deed (second) must be deemed a fraud upon the prior purchaser; but in this way both deeds may well stand together, consistently with the innocence of all parties." In Blanchard v. Brooks, 13 Pick. 67, the learned Chief Justice SHAW said: "The grant in the deed is of all his right, title, and interest in the land, and not of the land itself, or any particular estate in the land. The warranty is of the premises, — that is, of the estate granted, — which was all his right, title, and interest. It was equivalent to a warranty of the estate he then held or was seized of, and must be confined to estate vested. A conveyance of all the right, title, and interest in lands is certainly sufficient to pass the land itself, if the party conveying has an estate therein, at the time of the conveyance; but it passes no estate which is not then possessed, by the party." In Eaton v. Trowbridge, 38 Mich. 454, the court held that "a deed of the grantor's 'now remaining' interest in certain lands does not defeat a prior unrecorded conveyance (of the lands themselves), because it is not a second conveyance of anything previously conveyed; the deeds may stand together." In Adams v. Cuddy, 13 Pick. 463, Chief Justice SHAW again makes the distinction as to the subject of the transfer as

follows: "Now, we think the effect of conveying all the right and title I have, by fair construction, means all that has come to me, and that I have not legally parted with. But the deed to Simonds, whether registered or not, gave a good title against the grantor and his heirs. This, therefore, he had legally parted with, and it did not come within the general description of the estate conveyed." In Hope v. Stone, 10 Minn. 141 (Gil. 114), discussing the same question, the court said: "Under the deed of March 1, 1862, Hope acquired the right, title, and interest of Stone, and nothing more, for that is all which is attempted to be transferred by the terms of the conveyance; * * * and if the deed from Stone to Hope had been a conveyance of the land, instead of Stone's right, title, and interest, then it might be necessary to inquire whether the registration or possession were notice to Hope of rights in third parties antecedent and adverse to his own, but, as he took by the deed from Stone only Stone's right, he of course took nothing legal or equitable which Stone had previously transferred to Allen. So that the question of notice is out of the case, or, as might be said, the terms of the deed were themselves notice to him of the existence of any and all rights which had previously been conferred by Stone upon any and every other person." This same effect is given to a conveyance of "all my right, title, and interest" in Allison v. Thomas, 72 Cal. 562, 14 Pac. 309; Coe v. Persons Unknown, 43 Me. 432.

There would seem to be a stronger reason for applying this doctrine to transfers of personal property than to those of real estate. Sales of equities and conditional estates in chattels are comparatively infrequent. The offer of one to sell all his "right, title, and interest in and to" a specific piece of personal property would ordinarily suggest to a buyer that he was not purchasing the thing itself. Such a description in a bill of sale of a chattel would, at least, be so unusual as to be entitled to consideration in construing its effect. Upon the theory and for the reasons herein outlined, we conclude that respondents Rosenbaum took by their bill of sale only what it purported to convey, and that was not the elevator

and mill, but only Seefield's "right, title, and interest in and to" them, and therefore did not include what he had already conveyed to appellant Foss; in other words, that the subjects of sale in the two conveyances are not inconsistent with each other, but that both conveyances may stand. And so, in conclusion, we think it proper to say that we do not rest the decision of this case upon the often recognized distinction, in legal effect, between an active granting deed, like an ordinary warranty deed, and one simply releasing or discharging the interest, if any, of the maker, like a purely quitclaim deed, but rather upon the ground that these two instruments under consideration purported affirmatively to transfer the personal property rights in each specifically described, and that there is no such consistentency between them as requires us to say that one must be set aside in favor of the other. Our conclusion is that our former decision of this case, resting mainly upon questions not discussed in the present opinion, should be disaffirmed and vacated. The judgment appealed from is reversed and the cause remanded to the circuit court, with directions to dismiss the action.

FULLER, J., concurs.

CORSON. P. J., (dissenting). My views generally upon the questions discussed in the opinion of the majority of the court are fully stated in my dissenting opinion in Parker v. Randolph (S. D.) 59 N. W. 722.