## SHUTZ v. TIDRICK et al.

A quitclaim deed is a conveyance within recording act (Civ. Code, §§ 986, 987), making every conveyance void as against any subsequent bond purchaser whose conveyance is first recorded, and defining a "conveyance" as every instrument by which any estate in real property is created or aliened, and a quitclaim deed duly recorded conveys to the grantee therein a good title as against a prior warranty deed subsequently recorded, and of the existence of which the grantee had no notice.

A sale by an administrator is a judicial sale and has a like effect as a sheriff's sale under an execution.

A deed of lots executed in 1893 was recorded in April, 1902. Within two or three years after the execution of the deed trees. were set out on the lots and a sidewalk was constructed, and a barn was built on one of the lots, but it was soon destroyed by fire. The house occupied by the grantee, who left the state in 1894 or 1895, was on another lot. The grantee after leaving the state was never in possession of the lots either by himself or tenants. In 1896 the grantor died and his widow, as administratrix, sold the land by quitclaim deed, dated January 9, 1902, which deed was recorded January 16th following. **Held**, that the purchaser from the administratrix was not

chargeable with notice of the outstanding title or with facts putting him on inquiry as to its existence, and his title was superior.

Opinion filed November 21, 1910.)

Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by William F. Shutz against C. D. Tidrick and others. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Reversed and judgment ordered.

*Preston & Hannett,* for appellants. *James Brown,* for respondent.

CORSON, J. This is an appeal by the defendant from a judgment entered in favor of the plaintiff, and from the order denying a new trial.

The action was instituted by the plaintiff to quiet title to an undivided half interest in four certain lots in the city of Chamberlain, in this state, under the provisions of chapter 81, Laws of 1905, and the complaint is in the usual form. The defendant, Tidrick, in his answer, alleges that he was the owner in fee simple of the undivided one-half of the lots; that the title of the aforesaid property was vested in one John B. Lawler, who departed this life on or about the year 1895. He then proceeds to set out the proceedings in the county court under and by virtue of which the property was sold and transferred by the administratrix and vested in him, and demands judgment that the complaint of the plaintiff be dismissed, and that a decree be entered quieting the title to said premises in him. The plaintiff, for reply to the counterclaim of the defendant, Tidrick, admits that the deed from John D. Lawler and wife and the Dakota Land & Town Lot Company to Evelyn Sterns, for the premises in controversy in this action, was not recorded prior to April 21, 1902, and denies each and every other allegation contained in said counterclaim. The action was tried by the court without a jury and its findings and judgment were in favor of the plaintiff.

It is disclosed by the record, that prior to July 24, 1893, the ownership and title to said lots stood in the name of John D. Lawler and the Dakota Land & Town Lot Company; that on July

24, 1893, said Lawler and the Dakota Land & Town Lot Company executed a warranty deed to Evelyn Sterns; that the deed from Lawler and wife to Evelyn Sterns was recorded on April 21, 1902, nearly nine years after its execution, and that Mr. and Mrs. Sterns have resided in the state of Iowa since 1894 or 1895.

It is further disclosed by the record that Lawler died prior to the 11th day of March, 1896; that his widow, Mrs. Lawler, made application for and was duly appointed administratrix of the said estate on March 21, 1896; that subsequently, proceedings were had in said county court resulting in the sale of the said real estate of John D. Lawler of the undivided half of said lots and that the administratrix executed a deed of the said half interest in the four lots to Herbert E. Hitchcock, bearing date of January 9, 1902, which deed was recorded January 16th. This deed, after making the usual recitals as to the proceedings in the county court resulting in the order of sale, is as follows: "Now therefore, the said Ella Sturgis Lawler, as administratrix of the estate of the said John Dinan Lawler, deceased, as aforesaid, the party of the first part, in pursuance to the order last aforesaid of the said county court, for and in consideration of the said sum of two hundred sixty-eight dollars to her in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns forever, all the right, title, interest and estate of said John Dinan Lawler, deceased, at the time of his death, and also all the right, title and interest that the said estate by operation of law or otherwise may have acquired other than, or in addition to, that of said intestate, at the time of his death, in and to all that certain lot, piece or parcel of land situated, lying and being in said county of Brule, and state of South Dakota and particularly described as follows, to-wit: * * * Undivided one half, lots 5, 6, 7 and 8 in Block 28, in first addition to city of Chamberlain. * * *"

On January 17th, H. E. Hitchcock and wife conveyed the said property to Louise L. Hitchcock, which deed was recorded on

January 18, 1902. On April 21, 1902, said Louise L. Hitchcock and her husband, A. E. Hitchcock, conveyed the property to the defendant, Tidrick, which deed was filed for record in the office of the register of deeds on the 23d day of June, 1902.

Prior to the commencement of the action the said Sterns conveyed her interest in said property to the plaintiff and respondent in this action. It will be observed, therefore, that the plaintiff claims title through the deed executed by Lawler and wife on July 24, 1893, to Mrs. Sterns, but which was not recorded until April 21, 1902, and that the defendant, Tidrick, claims title under the administratrix sale made January, 1902, and the deed recorded the same month, some three months prior to the recording of the deed from Lawler and wife to the said Sterns. It will also be observed that Hitchcock, under whom Tidrick claims the property, obtained his title two months and a half before he had any knowledge of the existence of the deed to Evelyn Sterns, so far as is disclosed by the record.

It is assigned as error that the following fourth finding of fact is not supported by the evidence: "That the said Evelyn Sterns, immediately after obtaining her deed to said land in 1893, cultivated a portion of the same for a garden for about three years, planted trees around the border of the lots, and constructed sidewalks along the north and west side thereof." It is also assigned as error that the court erred in its conclusions of law, that the plaintiff is entitled to a judgment quieting his title to the premises against the claim of the defendant.

It is contended by the appellant that the court erred in its conclusions of law in favor of the plaintiff for the reason that it conclusively appears from the evidence that the administratrix's deed to Hitchcock was executed and recorded over two months prior to the recording of the deed from Lawler and wife to Mrs. Sterns, under which the plaintiff claims, and that the defendant thereby acquired a prior and superior title to that claimed by the plaintiff under the provisions of our recording act (Civ. Code, §§ 986-987) which read as follows: "Section 986. Every conveyance of real property, other than a lease for a term not exceeding

one year, is void as against any subsequent purchaser or incumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded. Section 987. The term 'conveyance,' as used in the last section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged or incumbered, or by which the title to any real property may be affected, except wills, executory contracts for the sale or purchase of real property, and powers of attorney."

We are inclined to take the view that the defendant is right in his contention and that, assuming that the administratrix's deed to Hitchcock was a quitclaim deed, still Hitchcock was protected under the provisions of section 987 above quoted, as a quitclaim deed is clearly within the purview of that section.

These two sections were evidently adopted by the Legislature of the late territory in 1866, from the proposed Civil Code of the state of New York, as they are verbatim copies, both as to numbers and contents, of the two sections in the proposed New York Code and have since remained in force in the territory and state, without change, with the exception that the word "three" in the first section has been stricken out and the word "one" inserted.

In a note to the sections in the proposed Code for the state of New York, the commissioners only cited 1 Rev. St. p. 756, § 1, and 1 Rev. St. p. 762, §§ 36-38, clearly indicating that the two sections were taken from the statutes of New York as they then existed.

The Court of Appeals of New York has uniformly held that a quitclaim deed of property recorded conveys to the grantee a good title as against a prior deed of bargain and sale or warranty deed subsequently recorded, and the existence of which the grantee had no actual notice. Wood v. Chapin, 13 N. Y. 509, 67 Am. Dec. 62; Hetzel v. Barber, 69 N. Y. 1.

In Wood v. Chapin, supra, it was held, as appears by the headnote, that "a bona fide purchaser of land for a valuable consideration, whose deed is first recorded, is protected against a prior

unrecorded conveyance, although his grantor purchased with notice thereof. And a purchaser from one who is protected by the recording act against a prior unrecorded conveyance is himself entitled to such protection, notwithstanding he purchased with notice of the prior conveyance, or without parting with a valuable consideration." And that "a creditor who purchases land at a sale, by virtue of legal proceedings instituted to collect his debt, is a purchaser for a valuable consideration, within the recording act, although the entire purchase price, except so much as is required to satisfy the expenses of the proceedings, is applied in payment of the debt." In the statement of the case, it is stated that "William Helm was the source of title under whom both parties claimed the premises; and he, on the 11th August, 1826, conveyed the same, being a tract of 470 acres, to George W. Fitzhugh, by a quitclaim deed, expressed to be in consideration of $1; and the deed, having been acknowledged, was recorded in Steuben county, on the 3d of November, 1827. Fitzhugh and his wife, on the 15th of September, 1835, conveyed the premises to Priestly Thornton, by a deed expressed to be given in consideration of $2,000, the payment of which was acknowledged in the deed. * * * Thornton conveyed the land to Benjamin H. Smith. * * * The plaintiff claimed to have acquired Smith's title by virtue of proceedings under the Revised Statutes respecting absent and absconding debtors. * * * " It may be well to add that this decision was made in 1858 prior to the enactment of our Civil Code. The defendant claimed title under a prior deed executed by Helm to Leland and Skinner, but which deed was not recorded until after the plaintiff's deed had been recorded. The opinions in the case were written by Denio, C. J., and by Comstock, J., and Hubbard, J., concurring, and the court, after an exhaustive review of the authorities, concluded that the plaintiff, by virtue of his title under the quitclaim deed from Helm to Fitzhugh, acquired the better title under the recording act.

In Hetzel v. Barber, supra, it was held by the Court of Appeals, that "a sheriff's deed, given in pursuance of a sale upon execution, and duly recorded, is protected by and has the benefit

of the recording act," and the court in its opinion, says: "It is true that the plaintiff's deed gave him a title good and complete against the whole world, except a subsequent purchaser in good faith, and for a valuable consideration whose deed was first recorded. 1 Rev. St. p. 739, § 144; page 756, § 1. As to such a purchaser plaintiff's deed is void, and the title is in law treated as remaining in the grantor until after the second deed was given. The second deed is just as effectual for every purpose as if the first deed had not been given. A sheriff's deed given in pursuance of a judgment and sale upon execution is treated as if given by the judgment debtor himself. It conveys precisely what he could have conveyed when the judgment was docketed. The sheriff by authority of law takes his property and conveys it to satisfy his debt, and the transfer of title is the same as if the sheriff had in fact acted as the authorized attorney of the debtor. The grantee in such cases holds, not under the sheriff, but under the debtor, and the deed when recorded is protected by, and has the benefit of, the recording act." A sale by an administratrix constitutes a judicial sale and has a like effect as a sheriff's sale under execution.

The two sections as proposed by the commissioners in the Civil Code for the state of New York, were substantially adopted by California, and in Graff et al. v. Middleton et al., 43 Cal. 341, these sections, as found in the Code of California, which are substantially the same as sections 986-987 of our Code, were construed by the learned Supreme Court of that state, and it was there held that "a quitclaim deed, received in good faith, and for a valuable consideration, and which is recorded before a prior deed of bargain and sale, will prevail over such prior deed." After quoting the two sections the court in its opinion says: "There can be no doubt upon the question presented, if real estate, or an interest in real estate, can be aliened or assigned by a quitclaim deed. To alien or alienate means simply to convey or transfer title to another. In this state, from the earliest times, quitclaim deeds have been in every-day use for the purpose of transferring title to land, and have been considered as effectual for that purpose as

deeds· of bargain and sale.  *  *  *  We consider, therefore, that
a quitclaim deed received in good faith and for a valuable con-
sideration, which is first recorded, will prevail over a deed of older
execution which is subsequently recorded." This decision was
made in April, 1872. This question again came before the court in
Frey v. Clifford, 44 Cal. 335, and the views expressed in the
·decision of Graff v. Middleton, supra, were again affirmed, that
court holding, as appears by the headnote, that, "a quitclaim deed
of 'all my right, title, and interest in Sacramento city, Upper Cali-
fornia, consisting of town lots and buildings thereupon,' passes
the grantor's interest in his lots in Sacramento," and "such deed,
if made in good faith and for a valuable consideration, and. with-
out notice, will prevail over an older deed which is subsequently
recorded." The two sections quoted in Graff v. Middleton, were
embodied, with no material change, in the Code of California
in 1872.

In a note to the case of Johnson v. Tool, 25 Am. Dec. 164,
the learned annotator says: "In Graff v. Middleton, 43 Cal. 341,
the question as to whether a quitclaim deed of one's interest in a
tract of land, received by the grantee in good faith and for a valu-
able consideration, and which is first recorded, will prevail over a
prior deed of bargain and sale subsequently recorded, was pre-
sented for determination to the Supreme Court of California. In
the consideration of that question it became necessary to consider
the meaning and effect of sections 26 and 36 of an act of the
Legislature of that state, entitled, 'An act concerning convey-
ances,'  *  *  *  and the conclusion arrived at was based partly
upon the determination that the term 'conveyance,' as used in sec-
tion 36, included quitclaim deeds.  *  *  *  In ·Frey v. Clifford,
44 Cal.. 335, the rule established in Graff v. Middleton was fol-
lowed with approval, and it is now recognized as the settled law of
this state." As this note was prepared in 1886, and the two cases
cited were recognized in the case of Allison v. Thomas et al., 72
Cal. 562,· 14 Pac. 309, 1 Am. St. Rep. 89, in 1887, as still in force
in that state and no decisions having been called to our attention
overruling these cases, we may conclude that the law, as estab-

lished by these decisions, still remains the law of California. The court in the latter case, after stating the rule as held in many of the states, says: "To this rule this court has made an exception founded upon the recording act"—citing the cases of Graff v. Middleton, supra, and Frey v. Clifford, supra.

In Cutler v. James et al., 64 Wis. 173, 24 N. W. 874, 54 Am. Rep. 603, the learned Supreme Court, held, as appears by the headnote: "A quitclaim deed is a 'conveyance' within the meaning of section 2241, Rev. St., and when recorded the grantee therein, if 'a purchaser in good faith and for a valuable consideration,' will be protected as such against a prior unrecorded warranty deed." The court in its opinion, says: "The question is not whether Samuel D. James, by virtue of his deed so reformed and the possession under it, got a better title to the land than the plaintiff had by virtue of his prior unrecorded deed, but whether his deed, so reformed, was such as to entitle him to the protection given by section 2241, Rev. St. That section provides, in effect, that 'every conveyance of real estate within this state * * * which shall not be recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall first be recorded.' Was the deed to Samuel D. James so reformed a 'conveyance' within the meaning of this section? The statute declares, in effect, that 'the term "conveyance," as used in that section, shall be construed to embrace every instrument in writing by which any estate, or interest in real estate, is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale or purchase of land.' Section 2242, Rev. St. The deed, so reformed, being an 'instrument in writing,' and not within any of the exceptions named, must, by the very words of the section, be embraced in the term 'conveyance,' as used in section 2241. This view is in harmony with previous utterances of this court, and decisions of other courts under similar statutes. Wynn v. Carter, 20 Wis. 107; Hoyt v.

Jones, 31 Wis. 396 et seq.; Ehle v. Brown, 31 Wis. 405; Helms v. Chadbourne, 45 Wis. 71-74; Girardin v. Lampe, 58 Wis. 267, 16 N. W. 614; Wood v. Chapin, 13 N. Y. 509, 67 Am. Dec. 62; Hetzel v. Barber, 69 N. Y. 1; Westbrook v. Gleason, 79 N. Y. 30, 31; Brown v. Banner Coal Co., 97 Ill. 214, 37 Am. Rep. 105; Shotwell v. Harrison, 22 Mich. 410; Fox v. Hall, 74 Mo. 315, 41 Am. Rep. 316; Bradbury v. Davis, 5 Colo. 265; Frey v. Clifford, 44 Cal. 335; Graff v. Middleton, 43 Cal. 341."

In Brown et al. v. Banner Coal & Coal Oil Company, 97 Ill. 214, it was held, as appears by the headnote: "A quitclaim deed of all the grantor's right, title, claim, etc., in and to land which is vacant and unoccupied, when recorded, will take precedence over a prior unrecorded warranty deed made by the same grantor, and pass the title, where the subsequent purchaser has no notice of the prior conveyance."

In Fox v. Hall, 74 Mo. 315, 41 Am. Rep. 316, the learned Supreme Court of Missouri held, as appears by the headnote, that "as against an unrecorded deed, a subsequent quitclaim deed from the same grantor will pass the title, provided the grantee takes for value and without notice of the former deed."

It is quite clear from the authorities that the title acquired by the defendant under the sale and deed executed by the administratrix to Hitchcock constituted the better title under the recording acts, unless he took with notice of the prior deed from Lawler and wife to Mrs. Sterns, or such a state of facts then existed as put him upon an inquiry as to the true state of the title.

Assuming that the facts found by the court in its fourth finding are sustained by the evidence, the finding itself is not sufficient to constitute notice to either Hitchcock or the defendant of the existence of the conveyance of Lawler and wife to Mrs. Sterns, or of sufficient facts to charge defendant with a constructive notice of the rights or the claim of Mrs. Sterns or her grantee under the deed from Lawler and wife to her.

It is disclosed by the evidence that the deed from Lawler and wife to Mrs. Sterns, bears date of July, 1893, and that the court finds that within two or three years thereafter trees were set out

and a sidewalk constructed, a partial fence erected, and a barn built upon one of the lots, but which soon after its erection was destroyed by fire. It is further shown by the evidence, however, that the house, claimed to have been occupied by her before she and her husband removed to Iowa, was situated upon a lot other than those in controversy in this action.

In the case of Betts v. Letcher et al., 1 S. D. 182, 46 N. W. 193 (195), this court said: "While the authorities are agreed that the possession must be actual, open, and notorious, in order to constitute a notice, yet they are by no means agreed as to what facts, or character of facts, will be sufficient to constitute the requisite notoriety."

Clearly in the case at bar, there was no such actual, open, and notorious possession as constituted a notice to Hitchcock that there was any outstanding title inconsistent with the record title in Lawler at the time he made his purchase, and no circumstances existed putting him upon inquiry as to the existence of any such title. So far as the record discloses neither Mrs. Sterns nor her husband had any actual possession or exercised any visible control over the property, or had any actual possession of the lots in controversy from the time they left the state, in 1894 or 1895, to the time of the sale by the administratrix in January, 1902, a period of about seven years. The finding failed to show that Mr. or Mrs. Sterns were in possession of these lots, either by themselves or their tenants, from the time they left the state in 1894 or 1895, to the time the same was purchased by Hitchcock. So far as the record discloses, therefore, there was no such possession by Mr. or Mrs. Sterns shown, as imparted any notice of their claim to Hitchcock, and it is not claimed that Hitchcock had any actual notice of the deed to Mrs. Sterns.

We are clearly of the opinion therefore that there was no such possession of the property by Mrs. Sterns or her husband, at the time Hitchcock purchased the same in January, 1902, as imparted notice to him of the existence of any outstanding title or of the existence of any fact tending to charge the said Hitchcock or the plaintiff with such constructive notice, or any facts incon-

sistent with the title of Lawler at the time of his death with any outstanding title inconsistent with the legal title of the estate of Lawler appearing of record.

Counsel for the defendant has called our attention to the cases of Parker v. Randolph et al., 5 S. D. 549, 59 N. W. 722, 29 L. R. A. 33, Rosenbaum v. Foss, 7 S. D. 83, 63 N. W. 538, and Fowler v. Will, 19 S. D. 131, 102 N. W. 598, 117 Am. St. Rep. 938, as establishing the law of this state that a party claiming under a quitclaim deed is not protected as against the conveyance by warranty deed previously made, not recorded. But in the case of Parker v. Randolph, one of the judges concurred specially on the ground that the party under the quitclaim deed took with actual notice of the outstanding title, and one of the judges dissented from the opinion.

The case of Rosenbaum v. Foss, supra, was a case in which a chattel mortgage of personal property was involved and did not require any decision upon the question as applicable to real property. The only case, therefore, in which this court has held directly that an outstanding warranty deed was good, though unrecorded, as against a quitclaim deed recorded, is the case of Fowler v. Will, supra, but neither in that case nor in the former cases referred to, were the decisions of the Supreme Court of California (Frey v. Clifford, 44 Cal. 335; Graff v. Middleton, 43 Cal. 341) and the decisions of the Court of Appeals of New York, and other cases cited, called to the attention of the court.

We are of the opinion, therefore, that under the authorities cited, and the later decisions of the Supreme Court of the United States and of the Court of Appeals of this circuit, cited in the dissenting opinion in the case of Fowler v. Will, supra, the decision in that case should be overruled.

The views herein expressed in this opinion lead to the conclusion that the judgment of the circuit court in the case at bar should be reversed and judgment entered in favor of the defendant, and it is so ordered.

McCOY, J. While I concur in the result of the foregoing opinion, I cannot concur in that portion thereof which overrules

Fowler v. Will. In my opinion the principle laid down in Fowler v. Will is not directly applicable in the case at bar, and that this case should be distinguished therefrom without overruling the same.

HANEY, J., dissenting.