COCHRANE et al, Appellants, v. McCOY, Respondent.

(179 N. W. 210.)

(File No. 4578.    Opinion filed September 24, 1920.    Petition for
rehearing stricken from files November 6, 1920.)

1. **Parties—Plaintiff-appellant, Decease of, Administrator Appointed,
Assignment Before Decease—Pending Appeal—New Plaintiffs
Substituted as Parties in Interest.**

Where, after trial below and pending appeal to Supreme
Court, plaintiff died, and prior thereto conveyed his interest in
the realty involved, an administrator having been appointed
pending appeal, this Court, upon satisfactory showing that
present plaintiffs were real party plaintiffs in interest, ordered
substitution of their names as plaintiffs-appellants.

2. **Conveyancing—Trustee of Realty, Empowered to Convey by Di-
rection of a Committee—Trustee's Deeds, One as Trustee, One
as Individual, Without Committee's Consent, Without Co-
grantee's Knowledge, Nominal Consideration Paid by Third
Party Claiming Title—Fraudulent, Though Conveying Title
to Grantees.**

A person held realty as trustee for a syndicate and a
corporation, known as a railroad company, with power to sell
and convey under advice and direction of an executive com-
mittee, the express purpose of the syndicate being to lay out
and plat a town site on the land and to aid in construction of
the railroad, the land having been thereafter surveyed and
platted, but the railroad not constructed, both purposes having
been shortly abandoned.  He thereafter executed a special war-
ranty deed of said land as trustee to B and W, and another
in his individual capacity to them, without knowledge or con-
sent of the committee, and without other consideration than
$1 each paid by one C, who had knowledge of the trust and
conditions thereof; the conveyance being made without know-
ledge of W and with intention by C that W should hold legal
title for C's benefit.  Held, the conveyances were in fraud of
beneficiaries of the trust; yet they were good as against all but
the beneficiaries, and as between trustee and said grantees
they passed title.

3. **Same—Trustee's Recorded Deed to Tax Grantee in Possession
Claiming Ownership, Trustee's Prior Deed Unrecorded—Last
Grantee's Superior Interest, But Subject to Trust—Statute.**

Where a trustee of realty, who had previously conveyed

title (though in fraud of rights of beneficiaries) to third parties, executed another deed purporting to convey the entire land to one in possession claiming ownership under a tax deed, the second deed being first recorded, **held**, the subsequent deed as between its grantee and the former grantee conveyed an interest superior to that conveyed to first grantees under Sec. 592, Code 1919, providing that every conveyance of realty, etc., is void as against a subsequent purchaser for valuable consideration, whose conveyance is first recorded; and the deed last executed would have passed title under said statute but for the fact that the recorded declaration of trust under which grantor was holding title, charged the last grantee with knowledge of the beneficiaries' rights thereunder. **Held**, further, that said last deed, not being executed as trustee, did not convey title the grantor was holding in trust, but only the one-tenth individual interest therein which grantor owned. **Held**, further, that one in possession and having made improvements, and claiming through mesne conveyances through said last grantee, has a superior equity as against one claiming as beneficiary under the trustee's prior deed and who paid but a nominal consideration, was never in possession and paid no taxes, the adversary party and her grantors having paid taxes for a period warranting title through possession and such payments had not the action been pending.

4. Conveyancing—Trustee's Deed, Consideration Therefor Returned, Non-possession, Non-claim Thereunder Over 20 Years, Quit-Claim Deed From Grantee Thereafter, Rights Under, As Against Claimant in Possession.

Where one, holding realty in trust with right to sell and convey upon instructions from a committee representing beneficiaries, conveyed town lots to T, pursuant to the trust, the consideration therefor however having failed by being returned to grantor, and T took possession and thereafter never after 5 years from execution of deed asserted any claim until some 29 years later when she executed a quitclaim deed to one through whom plaintiff claimed as beneficiary in a suit to quiet title; defendant and predecessors in interest being in possession under color of title for over 20 years and claiming ownership as against all the world; **held**, that plaintiff was barred from any claim to the land as against defendant.

5. Same—Defendant's Acceptance of Trustee's Deed in Confirmation of Tax Title, Plaintiff's Claim Through Same Grantor, Whether Grantees Were Tenants in Common, Or Adversaries—Tacking, Estoppel.

While as a general rule, joint owners acquiring their interest from a common source, become tenants in common, and acts by one tenant in common for protection of his title inures to

benefit of the other, this rule does not apply where one claiming under a trustee's deed and who acquired same for confirmation of his title under a tax deed, is asserting title as against one claiming as beneficiary under another deed from the trustee; since holder of tax deed was claiming adversely to the trustee; and one in his position may tack to his possession that of the grantor for purpose of establishing title by adverse possession, as against such co-tenant, and he is not estopped from so doing.

**6.   Quieting Title—Plaintiff Out of Possession, Defendant In, Claiming Ownership, Improving and Paying Taxes—Relative Rights.**

A plaintiff in suit to quiet title, claiming through conveyances from one through whom defendant claims, never having been in possession, and having paid no taxes nor offered to pay any, can not establish title as against defendant in possession and who with his predecessors in interest claiming ownership, worked and improved the land and paid taxes during the period including long pendency of the action of over 20 years; and equitable relief should be denied plaintiff on ground of laches.

McCoy, P. J., taking no part in the decision.

Appeal from Circuit Court, Brown County.   Hon. Thomas L. Bouck, Judge.

Action by Stacey A. Cochrane, special administrator of James H. Welch, deceased, and John W. Crammer, substituted for James H. Welch, deceased, against Anna E. McCoy, to quiet title to realty.   From a judgment for defendant, and from an order denying a new trial, plantiffs appeal.   Affirmed.

*S. H. Cranmer,* and *Amos N. Goodman,* for Appellant.
*Crofoot & Ryan,* and *W. F. Mason,* for Respondent.

(2)   To point two of the opinion, Appellant cited: Baldwin v. Burt, 43 Neb. 245, 61 N. W. 601; Peavey v. Wells, (Minn.) 161 N. W. 508.

(5)   To point five, Appellant cited: Ruling Case Law, Vol. 7, p. 819; Mining Co. v. Yarwood, 67 Pac. 749; Busch v. Huston, 75 Ill. 344; Mills v. Hart, 52 Pac. 680; Boyd v. Boyd, 51 N. E. 782; Barrett v. McCarty, 20 S. D. 75.

Respondent cited: 7 R. C. L. 844, Sec. 40; Boyd v. Boyd (Ill.), 51 N. E. 782.

POLLEY, J.   This is an action to quiet title to an undivided one-half interest in a quarter section of land in Brown county.

The case was here on a former appeal from an order of the trial court dismissing the action for want of prosecution. See Welch v. McCoy, 40 S. D. 273, 167 N. W. 159.

[1] It was suggested at the oral argument of this appeal that the appellant, James H. Welch, had died intestate since the trial of this case, and that one Stacy A. Cochrane was the duly appointed, qualified, and acting special administrator of the estate of said Welch. It was also satisfactorily shown to the court that prior to his death the said Welch had conveyed the real property involved in this action to John W. Crammer, and that the said Stacy A. Cochrane, as the special administrator of the said James H. Welch, deceased, and said John W. Crammer are the proper parties plaintiffs herein.

On and prior to the 14th day of September, A. D. 1883, the land involved was owned by one Albert Jackson. On that day said Jackson and wife conveyed said land to one V. P. Kennedy as trustee for the benefit of a certain unincorporated association of persons known as the Ordway Syndicate, and a certain incorporation known as the James River Valley Railroad Company. The purpose of the above trust, as appears from the articles of association of the Ordway Syndicate, was to lay out and plat a town site on said land, and to aid in the construction of the said railroad. The said articles of association contained the following clause relative to the powers and duties of the trustee:

"He [the trustee] shall receive the title to all lands purchased or acquired in any way or manner by the syndicate, and shall hold the same in trust for each of the parties hereto, with this express reservation—under the advice and direction of an executive committee, he shall be authorized and empowered to sell and convey the real estate of this syndicate."

The trustee was himself a beneficiary of the said trust to the extent of undivided one-tenth interest in the property owned by the said syndicate. The land was surveyed and platted into the town of Brainard, but the railroad was not constructed, and both the town site and the railroad were entirely abandoned within a short time, and neither the members of the said syndicate nor the railroad company appear to ever have taken any further action relative to either of said enterprises or any further interest in the said property.

[2]   On the 4th day of May, 1896, the said Kennedy execut-
ed two special warranty deeds; one as trustee to Nimrod Barrick
and James H. Welch, and the other in his individual capacity to the
same parties.   Each of these deeds purported to convey all the
land in controversy to the said grantees.   These deeds were
executed by the said Kennedy, without the knowledge or consent
of the executive committee.   Said deeds were made without any
consideration except the sum of $1 paid for each of said deeds
by S. H. Cranmer, who at that time had knowledge of the trust
and the conditions thereof.   Said conveyances were made without
the knowledge of the grantee, Welch, and with the intention on
the part of the said Cranmer that Welch should hold the legal
title for the sole benefit of Cranmer.   These conveyances, made
under the above circumstances, were in fraud of the rights of the
beneficiaries of the said trust, and it is contended by respondent
that said deeds conveyed no title to the said grantees, unless
possibly the one-tenth interest owned by said Kennedy.   But this
position is not well taken.   Conceding that these conveyances
were in fraud of the rights of the beneficiaries of the trust, still
they were good as against every one but the beneficiaries, and as
between Kennedy and the grantees named in the deeds the title
passed to said grantees.

[3]   On the 12th day of May, 1897, Nimrod Barrick con-
veyed such title as he may have acquired through his deed from
Kennedy to Benjamin Cummins, who was then in possession of
the land and claiming to be the owner thereof through and under
a tax deed issued by the county treasurer of Brown county.   The
deeds from Kennedy to Welch and Barrick was not recorded until
the 27th day of April, 1897.   On the 23d day of April, 1897,
Kennedy and wife executed a deed to Benjamin Cummings, pur-
porting to convey the entire quarter section to Cummings, which
deed was filed for record on the 23d day of April, 1897, three
days prior to the recording of the deeds to Welch and Barrick.
This deed appears to have been accepted by Cummings in good
faith and for a valuable consideration, and having been recorded
before the Welch and Barrick deeds, was superior, as between
Welch and Cummings, to the Welch and Barrick deeds, and
would have passed the title to the premises to Cummings (sec-
tion 592, c. 1919; Chutz v. Tidrick, 26 S. D. 505, 128 N. W.

811) were it not for the fact that, the declaration of trust under which Kennedy was holding title being of record, Cummings was charged with knowledge of the rights of the beneficiaries thereunder. The deed from Kennedy and wife was not signed by Kennedy as trustee, therefore did not convey the title Kennedy was holding as trustee as against the beneficiaries of the trust, and Cummings, acquired only the individual interest of Kennedy. All of Cummings' title afterwards passed through various conveyances to respondent.

[4] In December, 1883, Kennedy sold and conveyed four lots in the said town site to one Dollie Tracy. This conveyance was executed by Kennedy pursuant to his trust and conveyed good title. But the purpose for which this conveyance was made failed, and the consideration Dollie Tracy had given therefor—a tract of land conveyed by her to Kennedy—had been reconveyed to her. Thereafter she asserted no further claim to said lots until the 14th day of May, 1917, when she executed a quitclaim deed to Welch, purporting to convey said lots to him, and on the 4th day of October, 1918, Welch filed an amended and supplemental complaint, wherein he claimed title to said lots under said last-mentioned deed. To this claim defendant pleaded the 20-year statute of limitations. It is not claimed or attempted to be shown that Dollie Tracy was ever in possession of these lots, or that any claim to them was made by her or her successor in interest since not later than some time in 1888 until the filing of the above-mentioned amended and supplemental complaint on the 4th day of October, 1918. In April, 1897, Benjamin Cummings went into the actual occupancy of the said land under color of title, and from that time until the filing of the said amended and supplemental complaint in 1918, a period of more than 20 years, defendant by herself or by her predecessors in interest was in the actual open possession of the land under color of title and claiming to own the same as against all the world. This was sufficint to bar any claim as against Dollie Tracy or those claiming through or under her.

[5] It is contended by appellants that because Benjamin Cummings, one of defendant's grantors, accepted a deed from Kennedy, through whom plaintiff also claims his title, Cummings and his successors in interest became and were tenants in com-

mon with plaintiff, and any title that Cummings acquired under
or through said tax deed was equally for the benefit of Welch,
and there after Cummings and his successors in interest could
not assert title adversely to Welch or his successors in interest.
This claim is made as against the tax deed above mentioned that
was acquired by respondent or by other parties who conveyed to
her. It is true that, as a general rule, joint owners who acquire
their interest from a common source become tenants in common,
and acts by one tenant in common for the protection of his title
inure to the benefit of all, but this rule does not apply in this
case because at the time Cummings took his deed from Kennedy
he was claiming the whole of the land adversely to Kennedy
under a tax deed from Brown county, and he took the deed from
Kennedy for the purpose of quieting his title under his tax deed.
Title acquired under these circumstances does not make the
owners tenants in common.

The rule applicable to this case is stated in 7 R. C. L. p. 846,
as follows:

"The title acquired by one of the cotenants of real property
under a deed in severalty from a cotenant, who is holding ad-
versely does not inure to the benefit of another cotenant, and it is
held that the grantees may tack their possession to that of their
grantors for the purpose of establishing a title by adverse posses-
sion, as against such other cotenant. Wheeler v. Taylor, 32 Or.
421, 52 Pac. 183, 67 Am. St. Rep. 540.

Under the circumstances shown by this record respondent
is not estopped from asserting title adversely to appellants, neither
have appellants shown themselves entitled to the relief prayed for
in their amended and supplemental complaint.

[6] This is a suit in equity, brought on the equity side
of the court, whereby appellants, out of possession, are seeking
to have a court of equity quiet title in them. When this cause
was here on former appeal we held that, inasmuch as respondent
had interposed a counterclaim, the long delay did not warrant a
dismissal for want of prosecution; but we did not intimate that when
the case was finally submitted the trial court should not consider
all the equities; and it was the duty of the trial court, as well
as its right, to consider, in connection with the other equities, the
conduct of both parties between the commencement of the action

and its final submission. During all this time respondent and her predecessors in interest were in possession of the land under claim of ownership, working it and improving it and enhancing its value. Welch had never been in possession nor sought possession nor exercised any act of ownership. He never paid, nor offered to pay, any taxes, and this is true of all the beneficiaries of the trust under which Kennedy held the legal title. Respondent paid the taxes for a sufficient length of time to have acquired title through possession and payment of taxes had the action not been pending. While it cannot be held that respondent acquired title by adverse possession and payment of taxes, the court was justified in denying the equitable relief sought, and to place such denial squarely on the ground of laches.

The judgment and order appealed from are affirmed.

McCOY, P. J., took no part in this decision.